**Claire EIDEN, Appellant,**

**v.**

**SECRETARY OF HEALTH, EDUCATION AND WELFARE, Appellee.**

**No. 805, Docket 79–6149.**

United States Court of Appeals, Second Circuit.

Argued Feb. 28, 1980.

Decided Feb. 29, 1980.

---

16. The predicate felony provision did not take effect until after Hunter's offense was committed. *See* note 4, *supra.*

Toby Golick, New York City (Legal Services for the Elderly Poor), for appellant.

Edward R. Korman, U. S. Atty., E. D. N. Y., Brooklyn, N. Y. (Mary McGowan Davis, Joan M. Dolan, Robert L. Begleiter, Asst. U. S. Attys., Brooklyn, N. Y., of counsel), for appellee.

Before KAUFMAN, Chief Judge, TIMBERS, Circuit Judge, and WERKER, District Judge.*

IRVING R. KAUFMAN, Chief Judge:

We reverse the judgment below and remand to the Secretary for further proceedings consistent with this opinion.

■ Once again we are compelled to reverse the Secretary's determination that a claimant is not "disabled" within the meaning of 42 U.S.C. § 423(d)(1). Although the Secretary's decision will be affirmed when it is supported by "substantial evidence," *id.* § 405(g); *Richardson v. Perales*, 402 U.S. 389, 401, 91 S.Ct. 1420, 1427, 28 L.Ed.2d 842 (1971), we have repeatedly stated that when "no contradictory evidence is presented, a treating physician's expert opinion is binding on the Secretary." *Alvarado v. Califano*, 605 F.2d 34, 35 (2d Cir. 1979) (per curiam); *accord, Bastien v. Califano*, 572 F.2d 908, 912 (2d Cir. 1978); *Gold v. Secretary of Health, Education and Welfare*, 463 F.2d 38, 42 (2d Cir. 1972). This admonition has been ignored in this case.

Mrs. Claire Eiden left her position as a legal stenographer in 1970, and sought disability benefits for the period ending June 30, 1975, the date upon which her insurance ended. The only witness to appear before the administrative law judge (ALJ), Mrs. Eiden testified that she was often unable to move her fingers or knees, that she could not push or pull with her hands, and that she had difficulty sitting for extended periods. Moreover, she introduced a report by the physician who had treated her since 1970. Dr. Leo Parnes, an osteopath, unequivocally diagnosed Mrs. Eiden as suffering from "severe hypertrophic arthritis of the spine and extremities, with limitation of motion, spasms and pain, peripheral vascular disease with varicose veins and edema and decreased pulsations, weakness." This diagnosis was based, according to Dr. Parnes, on EKG tracing and X–ray reports. In a subsequent letter to the Secretary, Dr. Parnes made clear his view that Mrs. Eiden had been "completely disabled since 1970."

The ALJ, in turn, ordered a medical examination of Mrs. Eiden by Dr. Fisher. Al-

---

* Of the Southern District of New York, sitting by designation.

though Dr. Fisher found no evidence of varicosities and normal pulsations, he reported that plaintiff suffered from coronary insufficiency. He concluded that she could sit, stand, or walk only one hour each day, and that she could engage in no lifting, carrying or fine manipulation. Moreover, tests conducted by Dr. King, at the request of Dr. Fisher, found "mild to moderate enlargement of the heart, and mild pulmonary vascular congestion."

After reviewing this evidence, the ALJ found that the "medical evidence . . . is insufficient to demonstrate any impairments of sufficient severity which existed on or before June 30, 1975." He relied on the fact that (1) Dr. Parnes provided no objective test results; (2) Mrs. Eiden had never been hospitalized; and (3) she was not examined by a physician (as distinguished from an osteopath) until he ordered an examination. Thus, he concluded that plaintiff's evidence left the "degree of impairment . . . to pure conjecture, surmise, and speculation," and that she could "perform her regular work as a legal stenographer." Both Magistrate Caden and Judge Neaher decided that this conclusion was supported by substantial evidence.

Our decisions in *Alvarado, Bastien,* and *Gold* compel us to reach a different conclusion. The only evidence before the Secretary detailed a number of medical findings, including Dr. Parnes's determination that Mrs. Eiden was unable to work in 1970. Indeed, the examination conducted by the physician designated by the ALJ indicated that plaintiff could sit, stand, or walk only one hour each day, and that she could engage in no lifting, carrying, or fine manipulation. The ALJ's conclusion, therefore, that Mrs. Eiden could have worked as a legal stenographer is mystifying. In the face of the testimony verifying Mrs. Eiden's disability, the fact that no pre-1975 medical records were introduced is of no significance. There was a complete absence of contrary medical proof to the affirmative evidence of disability: " 'evidence bearing upon an applicant's condition subsequent to the date [of eligibility] is pertinent evidence in that it may disclose the severity and continuity of impairments existing before.' " *Gold v. Secretary of HEW,* 463 F.2d 38, 42 (2d Cir. 1971) (quoting *Carnevale v. Gardner,* 393 F.2d 889, 890 (2d Cir. 1968)). Moreover, there is no requirement that medical testimony "be supported by 'objective' clinical or laboratory findings." *Cutler v. Weinberger,* 516 F.2d 1282, 1287 (2d Cir. 1975).

In addition, the ALJ did not fulfill his affirmative obligation to assist this *pro se* claimant in developing her case. *Gold, supra,* 463 F.2d at 43; *Rosenberg v. Richardson,* 538 F.2d 487, 489 (2d Cir. 1976). He should, at the very least, have made an effort to elicit information concerning plaintiff's condition prior to June 1975—and he should have sought Dr. Fisher's opinion on this issue. In the absence of evidence that Mrs. Eiden was not disabled in 1970, the Secretary was bound by Dr. Parnes's expert opinion. Accordingly, this case is remanded to the Secretary so that he can either award benefits or seek additional proof concerning plaintiff's pre-1975 condition. *See Alvarado, supra,* 605 F.2d at 35.