Juan ALMONTE, Plaintiff,

v.

Joseph A. CALIFANO, Jr., Secretary of Health, Education and Welfare, Defendant.

No. 78 Civ. 6181 (KTD).

United States District Court, S. D. New York.

March 31, 1980.

128

James N. Finney, Harlem Legal Services, Inc., New York City, for plaintiff; Leland DeGrasse, New York City, of counsel.

Robert B. Fiske, Jr., U.S. Atty. for the Southern District of New York, New York City, for defendant; Harvey J. Wolkoff, Asst. U.S. Atty., New York City, of counsel.

## OPINION & ORDER

KEVIN THOMAS DUFFY, District Judge:

Plaintiff, Juan F. Almonte, is a 46 year old native of the Dominican Republic. Since his arrival in the United States in 1955, he has worked continuously through June, 1977 as a dishwasher and as a maintenance man in a multiple dwelling. Plaintiff presently resides with his wife and five children in the Bronx.

Plaintiff filed an application for disability insurance benefits and supplemental security income on October 14, 1977. The application recites that plaintiff became unable to work as of June 30, 1977, due to heart disease. This application was denied originally and again upon reconsideration. Plaintiff then requested, and received, a hearing before an Administrative Law Judge of the Bureau of Hearing and Appeals. Plaintiff appeared without counsel. He did, however, require the services of an interpreter since he speaks only Spanish.

On July 12, 1978, the Administrative Law Judge found plaintiff not to be under a disability and therefore not entitled to the benefits claimed. That became the final decision of the Secretary when the Appeals Council declined to review the decision on October 20, 1978. Thereafter, plaintiff commenced the instant suit seeking review of the Secretary's final determination.

The Secretary has now moved, pursuant to Fed.R.Civ.P. 12(c), for judgment on the pleadings. Plaintiff has cross-moved for the same relief.

The Social Security Act, 42 U.S.C. § 1382c provides in pertinent part:

(a) (3)(A) An individual shall be considered to be disabled for purposes of this subchapter if he is unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months

. . . .

(B) For purposes of subparagraph (A), an individual shall be determined to be under a disability only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work. For purposes of the preceding sentence (with respect to any individual), "work which exists in the national economy" means work which exists in significant numbers either in the region where such individual lives or in several regions of the country.

(C) For purposes of this paragraph, a physical or mental impairment is an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically

acceptable clinical and laboratory diagnostic techniques.

■ Under this statutory framework, proving the existence of one or more impairments does not, without more, establish disability within the meaning of the Act. Rather, these impairments must be of such severity to preclude gainful employment.

■ In order to affirm the Secretary's determination that plaintiff was not disabled within the meaning of the Act, that decision must be supported by substantial evidence in the administrative record. 42 U.S.C. §§ 405(g) and 1383. Stated differently, there must be sufficient relevant evidence in the record that a reasonable mind might accept as adequate to support the decision. *Richardson v. Perales*, 402 U.S. 389, 401, 91 S.Ct. 1420, 1427, 28 L.Ed.2d 842 (1971).

Within these guidelines, the assessment of a possible disability requires consideration of a number of factors. These include: the objective medical facts; diagnosis or medical opinion based upon such facts; subjective evidence of pain or disability testified to by the claimant or others; and, the claimant's educational background, age, and work experience. *Bastien v. Califano*, 572 F.2d 908 (2d Cir. 1978); *Gold v. Secretary of Health, Education and Welfare*, 463 F.2d 38 (2d Cir. 1972).

The relevant medical evidence which was before the Administrative Law Judge consisted of the following.

In June of 1976, plaintiff was first treated for chest pains and palpitations at Jewish Memorial Hospital as an outpatient. On June 16, 1977, he was admitted to Jewish Memorial for observation after experiencing a sudden onset of palpitations, chest pain and sweating.

After spending six days in Jewish Memorial undergoing tests and observation, the plaintiff was discharged. There was no evidence at that time of a severe medical condition or one warranting immediate medical attention. And, while no medication was prescribed for plaintiff, he was advised by the treating physician in the

hospital to receive follow up treatment as an outpatient at the hospital's cardiac clinic. The treating physician, Dr. Michael Gherma, also advised plaintiff not to work for one week.

The admitting diagnosis at Jewish Memorial was cardiac arrhythmia. The testing and observation at Jewish Memorial produced a final diagnosis that plaintiff was suffering from paroxysmal supraventricular tachycardia (excessively rapid heart action which comes and goes quite abruptly), secondary to Wolff-Parkinson-White Syndrome (a defect in the functioning of the heart), and chronic alcoholism. Thereafter, plaintiff's frequent visits to the cardiac clinic did not result in a renewed direction to refrain from work nor was any medication ever prescribed.

In addition to the medical records from Jewish Memorial, there was evidence that the plaintiff has been under the care of a private physician since February, 1975. The physician, Dr. Jacques Jakoff, has twice diagnosed that the plaintiff is suffering from atrial fibrillation. He characterized the plaintiff in these reports as "a very sick man" who "naturally . . . cannot work." He concludes, based upon his observations, that the plaintiff "needs the help of the authorities."

At the hearing the plaintiff, through his interpreter, testified that as a result of his cardiac condition he suffers from the following symptoms: swelling in his legs; a restricting tightness in his chest; and difficulty in breathing, which collectively inhibit his ability to walk any significant distances, climb stairs or lift heavy objects.

■ It has repeatedly been stated in this Circuit that "when no contradictory evidence is presented, a treating physician's expert opinion is binding on the Secretary." *Eiden v. Secretary of Health, Education and Welfare*, 616 F.2d 63 (2d Cir. 1980), *quoting, Alvarado v. Califano*, 605 F.2d 34, 35 (2d Cir. 1979) (per curiam) and *Bastien v. Califano, supra*, at, 912 (2d Cir. 1978). However, where there is conflicting medical evidence it is incumbent upon the Administrative Law Judge, as well as a reviewing court, to test the quality of the medical evidence submitted in an effort to determine an individual's true medical condition.

A review of the Jewish Memorial records reveals that during his six day stay at the hospital, plaintiff was subjected to extensive testing and observation. The hospital's admitting and discharging diagnosis have already been recited above.

The records of Dr. Jakoff, however, do not reveal an extensive observation and testing of the plaintiff over a short period of time. Rather, these reports contain the doctor's conclusions gleaned from the occasional treatment of the plaintiff between 1975 and 1978. The testing by Dr. Jakoff during this period was apparently limited to the administration of an EKG.

■ The threshold question is whether the medical evidence which was before the Administrative Law Judge was conflicting. I am inclined to believe it is not.

It is evident from all the records before me that plaintiff's condition was not feigned. Indeed, when admitted to Jewish Memorial, he was suffering from a rapid heart beat. The fact that during his stay and when discharged he was asymptomatic, does not alter the symptoms. These symptoms were real and were clinically verified upon his admission to the hospital.

Furthermore, the hospital's final diagnosis indicated certain cardiac irregularities. This final diagnosis is not in conflict with the conclusions of Dr. Jakoff. All the available medical data, together with plaintiff's own testimony, point to certain cardiac irregularities.

It is true that the hospital reports differ from those of Dr. Jakoff's in that they do not expressly find plaintiff to be suffering from a disabling condition and permanently unable to work. These differences, however, arise not from a fundamental conflict between the two sets of reports, but rather, from an absence of certain findings in the hospital records. Indeed, Jewish Memorial did not address the specific question of whether plaintiff's cardiac irregularities

were sufficient to preclude plaintiff from engaging in gainful employment.

The Administrative Law Judge had a different view of the relevant medical evidence. He reasoned that since plaintiff's heart rate eventually returned to normal and he was later discharged without receiving any medication, this indicated that he was not suffering from a disabling condition. He further reasoned that since plaintiff was instructed by Dr. Gherma in July, 1977, to remain home after his discharge for a period of one week, the logical inference was that plaintiff was able to return to work thereafter.

The Administrative Law Judge then went on to discredit the reports of Dr. Jakoff, as well as plaintiff's live testimony offered in support thereof, on the ground that the Jewish Memorial records were based upon significantly more clinical evidence and therefore entitled to much greater weight.

Under all the circumstances, I find that the Administrative Law Judge's conclusions are not supported by substantial evidence and are contrary to the principals set forth in *Bastien v. Califano, supra,* and its progeny.

It is clear that both Jewish Memorial and Dr. Jakoff concluded that plaintiff was suffering from cardiac irregularities. The only real potential conflict between the two sets of medical reports concerns plaintiff's ability to return to work. In July, 1977, Dr. Gherma advised plaintiff not to work for one week after his discharge.

There are two logical conclusions which may be drawn from this direction. The first, the one adopted by the Administrative Law Judge, is that after a week plaintiff was physically able to return to work. The second, equally as appealing, is that the plaintiff should remain home for a week to insure that his rapid cardiac palpitations did not reoccur.

Even assuming that the inference adopted by the Administrative Law Judge was correct, that opinion was rendered in July, 1977. Dr. Jakoff's conclusion that plaintiff could not return to work, was rendered in January, 1978, some six months after plaintiff's release from Jewish Memorial. Certainly this latter finding and opinion more accurately reflects plaintiff's most recent medical condition and his ability to engage in gainful employment. Thus, insofar as Dr. Jakoff's reports merely update those of Jewish Memorial, they are not in conflict. Accordingly, Dr. Jakoff's opinion concerning plaintiff's ability to work was binding upon the Secretary. However, since Dr. Jakoff's report does not expressly state when plaintiff was disabled, I must assume that the finding of disability is as of January, 1978, rather than June, 1977, as alleged by plaintiff.

This conclusion is further justified when the plaintiff's live testimony is reviewed. He testified, in essence, that his cardiac condition severely restricted his mobility. These "subjective" medical symptoms were corroborated in the notes of a Social Security Administrator who had interviewed the plaintiff in March, 1978.

In sum, when all the testimony and evidence is reviewed and due consideration is given to the settled rule that "[t]he Social Security Act is a remedial statute . . . its intent [being] inclusion rather than exclusion," *Marcus v. Califano,* 615 F.2d 23 at 29 (2d Cir. 1979), judgment must be entered for plaintiff.

Accordingly, defendant's motion for judgment on the pleadings must be denied and plaintiff's cross-motion for judgment granted.

SO ORDERED.