**Mary DMYTRIW, Plaintiff,**

v.

**Patricia Roberts HARRIS, Secretary of Health and Human Services, Defendant.**

**No. 79 C 2632.**

United States District Court, E. D. New York.

Nov. 3, 1980.

Binder, Binder & Cooper, Patchogue, N. Y., by Charles E. Binder, Patchogue, N. Y., for plaintiff.

Edward R. Korman, U. S. Atty., E. D. N. Y., Brooklyn, N. Y., by Jo Davis, Asst. U. S. Atty., Brooklyn, N. Y. (Frank V. Smith, III, Regional Atty., New York City and Annette Blum, Dept. of Health & Human Services, Washington, D. C., of counsel), for defendant.

## MEMORANDUM OF DECISION AND ORDER

NEAHER, District Judge.

Plaintiff, an applicant for Social Security disability insurance benefits and Supplemental Security Income, brought this action pursuant to 42 U.S.C. § 405(g) to review a final determination of the defendant Secretary denying her application for such benefits. The action is now before the court on the parties' respective motions for judgment, the plaintiff seeking reversal of the Secretary's determination and an award of benefits, and the Secretary requesting that her decision be affirmed and the action dismissed.

The administrative record reveals that plaintiff filed her application for disability insurance benefits on January 29, 1979, and on April 17 following, filed her application for Supplemental Security Income, at which time she was approaching the age of 52. Plaintiff is single and rents a room in a private home. She has been self–supporting since she was 17 years old, having left high school and worked as a sales clerk and posting clerk so she could obtain a high school equivalency diploma at night. In 1950 she entered the United States Air Force and served for 21 months. In 1952, on her return to civilian work, she was employed as a grocery clerk and checker for the A & P Company. She continued steadily in that capacity until 1974, when she found it necessary to enter the hospital for a cervical spinal fusion. After the surgery, unable to perform the lifting requirements of her previous work at A & P, and unwilling to retire, she voluntarily sought a desk job and from 1975 to 1978 worked as a bookkeeper at A & P. During that time, for a period of eight months, she underwent therapy at night while working a fulltime day job.

On October 7, 1978, plaintiff left her employment in order to enter the hospital a second time to obtain relief from persistent pains in her neck and shoulder. She remained at the Columbia Presbyterian Medical Center Hospital for a week undergoing x–rays, nerve studies and other tests. She was diagnosed as suffering from cervical radiculopathy related to her earlier anterior cervical body fusion. Following orthopedic consultation, plaintiff was advised that a further cervical spinal fusion to relieve the pain she was suffering would be inadvisable. Instead, she was prescribed a course of prednisone treatment, the wearing of a Philadelphia (cervical) collar and further orthopedic follow–up.

Plaintiff testified that because of the pain she was experiencing, she was unable to return to work following her discharge from the hospital; and that up to the time of the *de novo* hearing on July 3, 1979, she was still suffering constant pain which radiated from her shoulders and neck down through her arms and into her fingers, causing her hands to feel numb at times. This was brought on by a simple act of getting dressed and even taking a walk.

The radiology study at Columbia Presbyterian Medical Center suggested an objective basis for such pain in the posterior displacement of cervical vertebrae following the prior spinal fusion "with slight inter–vertebral disc space narrowing" in which there was "minimal spur formation" (Tr. 88). The radiologist also noted that the "foramen on the right are narrow at the level of 3–4 and on the left are somewhat less narrow at the same level. In the absence of trauma this might be secondary to some ligamentous laxity" (*id.*). His impression was that there was a "slight narrowing of the right sided foramen at C3–4 probably secondary to a minimal subluxation of C3 on C4." [1]

1. Dorland's Medical Dictionary, 24th ed., defines "subluxation" as "An incomplete or partial dislocation" of bone.

In his decision the Administrative Law Judge (ALJ) made a specific finding that plaintiff "has intermittent neck, shoulder and left arm pain" (Tr. 14). He concluded, however, that since she had the ability to perform her own cooking and household cleaning and to drive her automobile, she was able to perform her past relevant work and had residual functional capacity for at least sedentary work as defined in Regulation § 404.1567(a).[2] He therefore denied plaintiff's respective applications for disability benefits and his decision was ultimately adopted by the Secretary.

■ The legal principles applicable to judicial review of the Secretary's determination are well defined in both statutory and case law. The burden of proving disability is on the claimant. 42 U.S.C. § 423(d)(5). *Gold v. Secretary of HEW*, 463 F.2d 38, 41 (2d Cir. 1972). That means plaintiff here must prove that her

"physical . . . impairment or impairments are of such severity that [she] is not only unable to do [her] previous work but cannot, considering [her] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy . . . ." 42 U.S.C. § 423(d)(2)(A).

The same test of "disability" is applicable to plaintiff's claim for Supplemental Security Income. 42 U.S.C. § 1382c(a)(3)(A).

■ In assessing disability, factors to be considered are (1) the objective medical facts; (2) diagnoses or medical opinions based on such facts; (3) subjective evidence of pain or disability testified to by claimant or others; and (4) the claimant's educational background, age, and work experience. *Gold v. Secretary of HEW, supra. Bastien v. Califano*, 572 F.2d 908, 912 (2d Cir. 1978). And finally, if the Secretary's determination denying benefits is supported by substantial evidence, it is conclusive and must

be affirmed by the court. 42 U.S.C. §§ 405(g) and 1383(c)(3). *Rivera v. Harris*, 623 F.2d 212, 216 (2d Cir. 1980). "Substantial evidence means more than a mere scintilla, and is defined as such relevant evidence as a reasonable man might accept as adequate to support a conclusion." *Bastien v. Califano, supra*, 572 F.2d at 912, citing *Richardson v. Perales*, 402 U.S. 389, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971).

Applying the foregoing principles to the instant case, the subjective evidence of plaintiff's disabling pain would appear to have substantial support in the objective medical evidence found in her hospital records and the reports and opinions of several treating doctors. Thus, Dr. David L. Andrews of Columbia Presbyterian Medical Center, a specialist in orthopedic surgery, reported his opinion on December 20, 1978, that plaintiff, who had been under his continuing medical management since November 6, 1978, was "totally disabled in terms of gainful employment" (Tr. 93). Another treating doctor, Dr. Daniel Sciarra, attached to the Neurological Institute of Manhattan, and a specialist in neurology, on February 27, 1979, reported that plaintiff "needs many months and possibly years of rehabilitation of her cervical spine. This cannot be done until she is basically pain-free, and then possibly the patient may become a functioning individual" (Tr. 97). On June 4, 1979, Dr. Sciarra again wrote the ALJ advising "I think that she is disabled by her problem, by the operation that was carried out; the fusion in 1975, and by her inability to do physical labor because of her neck–shoulder problems" (Tr. 102). And finally, Dr. George L. Rivara, a specialist in internal medicine and cardiovascular diseases, reported on April 26, 1979, that he had plaintiff under his care since September 19, 1972, and that in his opinion she had "extensive cervical spondylosis [3] with radia-

---

2. *"Sedentary Work.* Sedentary work involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met."

3. Dorland's Medical Dictionary, 24th ed., defines "spondylosis" as "Ankylosis of a vertebral joint," and defines "ankylosis" as "Abnormal immobility and consolidation of a joint."

tion of pain to both hands" and "at present she is totally disabled for work" (Tr. 98).

In *Eiden v. Secretary of HEW*, 616 F.2d 63, 64 (2d Cir. 1980), the court pointed out again that when "no contradictory evidence is presented, a treating physician's expert opinion is binding on the Secretary," quoting from *Alvarado v. Califano*, 605 F.2d 34, 35 (2d Cir. 1979). In *Eiden* the evidence appeared to be far less strong than that presented in this case, in which there are supporting objective findings of cervical spine abnormalities as well as opinions of treating doctors.

Here there was no contradictory medical evidence which would furnish a basis for the rejection of plaintiff's claim of pain. Nor does it appear that the ALJ discredited plaintiff's testimony on credibility grounds. Rather, he was of opinion that her "pain has been alleviated by prescribed medication and the adherence to the cervical collar" (Tr. 14)–a conclusion which is not supported by any evidence discernible in the record. Although acknowledging that plaintiff "had a history of severe pain" (Tr. 14), the ALJ also concluded that her pain was only "moderate" and that there was a failure "to show by diagnostic or clinical evidence that she has an impairment because of her pain" (*id.*). That conclusion is completely contradicted by the medical evidence in the record.

Finally, there is no evidence in the record to support the Secretary's findings that plaintiff can perform "her past relevant work" or has "the residual functional capacity for at least sedentary work" (Tr. 15). No vocational expert appeared at the hearing to give evidence as to jobs plaintiff might be able to do in view of her doctors' opinions. Under the circumstances, this court must reverse the Secretary's present decision, deny her motion for judgment on the pleadings and remand the case to the Secretary either to provide evidence supporting the conclusion reached by the Administrative Law Judge or grant plaintiff's application for Social Security disability insurance benefits and Supplemental Security Income.

So ordered.

The Clerk of Court is directed to forward copies of this memorandum of decision and order to counsel for the parties.