Dialma VIERA, Plaintiff,

v.

Margaret M. HECKLER, Secretary of
Health and Human Services,
Defendant.

No. 80 CV 2323 (ERN).

United States District Court,
E.D. New York.

June 14, 1983.

Charles E. Binder, Hauppauge, N.Y., for plaintiff.

Raymond J. Dearie, U.S. Atty., E.D.N.Y., by Cyril Hyman, Asst. U.S. Atty., Brooklyn, N.Y., for defendant.

## MEMORANDUM OF DECISION AND ORDER

NEAHER, District Judge.

Plaintiff brought this action under 42 U.S.C. § 405(g) for judicial review of a final decision of the defendant Secretary of Health and Human Services ("Secretary"), which denied her application for a period of disability and Social Security disability insurance benefits, or, in the alternative, for Supplemental Security Income (SSI) benefits. Based upon the pleadings, the administrative record and their respective memoranda of law, each party seeks judgment. For the reasons stated below, the Court concludes that plaintiff has not met her burden of demonstrating that she was physically disabled from undertaking gainful employment prior to the expiration of her insured status on September 30, 1981, and that the Secretary's decision should be affirmed.

Plaintiff filed her applications for disability insurance benefits or SSI on May 4, 1979. She was then 46 years old and had last worked on January 23, 1979, when she states she became unable to work because of "cervical strain with a right cervical radiculitis." Tr. 57, 68.[1] At her de novo hearing before an administrative law judge (ALJ) on February 29, 1980, following initial and reconsidered denial of her applica-

---

1. References are to pages of the administrative record.

tions, plaintiff testified that she lived alone in an apartment in Woodside, Queens. She was born in Puerto Rico, attended the University of Puerto Rico, completing three years, and was employed for six years in San Juan as a reservations clerk for Trans Caribbean Airways, and later as a typist doing some filing work for a succession of employers until she came to the United States in September 1974. Tr. 26, 130–31. Subsequently, after quitting a permanent job with American Standards Testing Bureau, she performed temporary typing work at several companies in New York City through the Kentemp agency, traveling to work by bus. Tr. 29, 32, 130.

Plaintiff testified she is 5 feet 6 inches in height and that since September 1979 her weight went down from 120 to 100 pounds. Tr. 27. She also testified that her illness developed "gradually over the years," and recalled having pains in her head since 1974. Tr. 32. In her application, however, she specified that her disability began on January 21, 1979, when she tripped and fell on the job. This, she claimed, was aggravated by her sitting position in relation to a typewriter. Tr. 80.

A physician's report to the New York Workmen's Compensation Board reflects that plaintiff experienced "pain in her neck going into the right upper extremity and shoulder" as a result of sitting in an ill-fitting desk chair at work. She did not seek treatment, however, until February 22, 1979, when Dr. R.P. Koval examined her and provided office treatment consisting of moist heat and cervical traction. His examination revealed a "rigid neck ... spasm of the supporting muscles [and] ... tenderness in the right neck," and a diagnosis of "cervical strain with a right cervical radiculitis." Tr. 78. Although he certified plaintiff as "totally disabled," she did not return to him for further treatment, and her workmen's compensation payments ended in April or May 1979. Tr. 47, 79. She is supported by welfare payments of $246 a month plus $39 in food stamps.

For purposes of both SSI and disability insurance eligibility, a person is disabled when he is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). An individual's physical or mental impairment is not disabling under the Act unless it is "of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B).

Dr. Koval's certification to the Workmen's Compensation Board is not determinative on the question of disability for either Social Security insurance or SSI benefits. The compensation benefits plaintiff received are based upon an entirely different standard. As noted above, the Social Security Act conditions its benefits upon the existence of a "physical or mental impairment" which must be "of such severity that [the claimant] is not only unable to do his [or her] previous work but cannot ... engage in any other kind of substantial gainful work which exists in the national economy ...." Cf. Deyo v. Weinberger, 406 F.Supp. 968, 970 (S.D.N.Y.1975).

■ Review of the rather sparse medical evidence supports the Secretary's decision that plaintiff's combined physical impairments were not of such severity as to render her unable to continue doing the sedentary typing work she had performed for so many years. Radiological examination of her cervical and lumbosacral spine at the Hospital for Joint Diseases on June 19, 1979, revealed "no significant bony or soft tissue abnormality except for minimal degenerative spondylosis involving C5 and C6," and "no significant bony or soft tissue abnormality" of the lumbosacral spine. Similarly, only "minimal degenerative changes" were noted in plaintiff's hips, but "no other significant bony or joint abnormality." Tr. 97. Again, in August 1979, she was found to have a "normal skull" after radiological examination at the Columbia Presbyterian Medical Center, which revealed no fracture or bone erosion. Tr.

103. The medical diagnosis was that plaintiff did suffer from muscle contraction headaches, for which she takes Emperin with Codeine perhaps 6 times a month and Tylenol very occasionally. Tr. 105.

The addition of mental or emotional complaints of plaintiff are similarly ambiguous. Her treating psychiatrist, Dr. Juan F. Ponce, found her depressive neurosis "stable" in August 1979. Tr. 107. Dr. William Pollen, an orthopedic surgeon, considered her disabled "on the basis of a severe anxiety-depression," but after admitting her for two weeks of examination in his hospital in South Amboy, N.J., a "definitive diagnosis was not made." Tr. 126. The Secretary was clearly entitled to view Dr. Pollen's surmise that plaintiff is subject to intermittent "cerebral arterial spasm" in light of the Columbia Presbyterian Medical Center's contemporaneous finding that her headaches result from muscle contraction which is relieved by medication.

 On judicial review the Secretary's determination may be set aside only for legal error or lack of substantial evidence to support his findings. *Berry v. Richard Schweiker, Secretary of Health and Human Services,* 675 F.2d 464, 467 (2d Cir.1982). The preponderance of evidence is not required, and the rule of *Eiden v. Secretary of the Department of Health, Education and Welfare,* 616 F.2d 63 (2d Cir.1980), has no application where treating doctors are in conflict. Certainly the Secretary was entitled to prefer the opinion of Dr. Ponce, a treating psychiatrist, to that of a doctor in the orthopedic field. The only possible legal error here was the ALJ's reference to plaintiff's claims of pain not being supported by objective evidence. Tr. 13. The rule long established in this Circuit is "that subjective *pain* may serve as the basis for establishing disability, even if such pain is unaccompanied by positive clinical findings or other 'objective' medical evidence . . .", *Marcus v. Califano,* 615 F.2d 23, 27 (2d Cir.1979) (emphasis by the court).

The ALJ's error in this case, however, does not require a remand since after weighing the evidence, he explicitly found that plaintiff's claims of disabling pain were not credible and did not interfere with her ability to perform her past relevant work as a typist. Tr. 13–14. As pointed out in *Marcus, supra,* 615 F.2d at 27, "if the ALJ—after weighing the objective medical evidence in the record, appellant's demeanor, and other indicia of credibility—had decided to discredit appellant's claims of severe, disabling pain, then the decision would be supported by substantial evidence," and should be affirmed. On the evidence here of plaintiff's ability to walk up two flights of stairs to her apartment, her continual use of public transportation to travel to doctors and hospitals, her performance of household chores, reading and watching television, the Secretary had ample grounds to conclude that plaintiff was not disabled from performing the sedentary work she had previously done.

The Secretary's determination is accordingly affirmed and her motion for dismissal of the complaint is granted.

SO ORDERED.

The Clerk of Court is directed to forward copies of this Memorandum of Decision and Order to counsel for the parties.