**Jose R. ZAYAS, Plaintiff,**

v.

**Margaret M. HECKLER, Secretary of the Department of Health and Human Services, Defendant.**

**No. 80 Civ. 3403 (KTD).**

United States District Court, S.D. New York.

Aug. 8, 1983.

James W. Dabney, New York City, for plaintiff.

Rudolph W. Giuliani, U.S. Atty., S.D. N.Y., New York City, for defendant; Jordan Stanzler, Asst. U.S. Atty., New York City, of counsel.

## MEMORANDUM & ORDER

KEVIN THOMAS DUFFY, District Judge:

Plaintiff, Jose R. Zayas, filed applications for disability insurance and Supplemental Security Income ("SSI") benefits in February and April, 1979, respectively. Both applications were denied initially and on reconsideration. Record at 76–78. Plaintiff requested a hearing to review both applications. On January 1, 1980, Administrative Law Judge ("ALJ") Robert Schwartz found that plaintiff was not under a disability as defined in the Social Security Act. Record at 5–10. The ALJ's decision became the final decision of the Secretary of Health and Human Services ("the Secretary") when it was approved by the Appeals Council ("the Council") on April 10, 1980. Record at 3. Plaintiff then brought an action in this court to review the Secretary's decision. The case was remanded for further proceedings. *Zayas v. Harris*, No. 80–3403 (S.D.N.Y. September 1, 1981). Following a supplemental hearing held on March 31, 1982, ALJ Schwartz issued a decision to the Council that plaintiff was disabled. Record at 157–62. The Council, however, did not adopt the ALJ's recommendation, and denied plaintiff's claim. Record at 151–56.

Plaintiff brought the present action under sections 205(g) and 1631(c)(3) of the Social Security Act, as amended 42 U.S.C. § 405(g) and section 1383(c)(3), for review of the Secretary's final decision. Plaintiff moves for summary judgment pursuant to Fed.R.Civ.P. 56(a). Defendant moves for judgment on the pleadings pursuant to Fed.R.Civ.P. 12(c).

## FACTS

Plaintiff Jose R. Zayas is a 49 year old native Puerto Rican, who is married and has three children. He came to the United States in 1959, having completed high school and 14 months of business school in Puerto Rico. Plaintiff is fluent and literate in Spanish, but cannot read or write English, and has never had vocational training. In the 1950's plaintiff noticed that he had difficulty breathing when running up a hill. When he came to this country in 1959, he worked first for the Hercules-Carnation Company delivering sweaters. Plaintiff left Hercules-Carnation in 1965 because of his allergy to wool. Between 1965 and 1978, plaintiff was employed by Mount Sinai Hospital ("Mount Sinai") and held various unskilled positions over the years in the laboratory, laundry, kitchen, custodial, and messenger services. Plaintiff maintained a good work record at the hospital. During his thirteen years at Mount Sinai, however, plaintiff had to take three sick leave periods because of his asthma.

Plaintiff's bronchial asthma and allergies caused him to be sensitive to animal hair, strong odors, dust and cold temperatures, and limited his physical exertion. After working on the laboratory, kitchen and custodial staffs, plaintiff was eventually limited by his asthma to carrying test tubes between the hospital's laboratory and maternity areas. Finally, when a supervisor observed plaintiff using an asthma inhaler, plaintiff was suspended and placed on a medical leave of absence.

Plaintiff made several efforts to be rehired, but Mount Sinai repeatedly denied his requests, due to plaintiff's medical history. Record at 50–51; 212–16. Plaintiff has not worked at all since he left Mount Sinai on November 20, 1978, the date on which plaintiff states he became disabled.

SUPPLEMENTAL HEARING

The record of this case was greatly enhanced by the inclusion of Mount Sinai medical and personnel records, which were not available at the first hearing. The report of plaintiff's consultative exam and the deposition and affidavit of plaintiff's treating physician at Mount Sinai also supplement the original record.

Dr. Allen R. Gribetz, a board certified specialist in chest medicine and the author of several medical journal articles [1] stated in his affidavit that he treated plaintiff at Mount Sinai from 1979 through 1981. During the two year period, Dr. Gribetz treated plaintiff 25 times. Record at 314. The doctor stated several times that of the hundreds of asthmatics he has treated, plaintiff has the most severe bronchial asthma he had ever seen. Record at 160, 302, 315–17. Dr. Gribetz said that plaintiff's wheezing could not be controlled on a daily basis despite "maximum doses of medication, including steroids." Record at 301, 316. The doctor pointed out that at all but one of the twenty-five examinations between 1979 and 1981, plaintiff exhibited severe wheezing and shortness of breath,

which were beyond medicinal control. Record at 301. Furthermore, according to Dr. Gribetz, plaintiff would have had extreme difficulty on those occasions doing any work that involved "any significant exertion." Record at 317. Dr. Gribetz did concede, however, that plaintiff could probably do sedentary tasks. Record at 303. The doctor was certain, however, that plaintiff's work capability would be limited to clear, temperate work environments and that he would have tremendous difficulty walking and climbing subway steps to commute to any job however sedentary. Record at 303, 317, 319. These statements support plaintiff's testimony that he could not walk more than half-a-block without stopping to catch his breath. Record at 192. Further, although plaintiff is particularly sensitive to dust and cold temperatures, Dr. Gribetz pointed out that plaintiff's condition never improved even when the weather was mild and the air pollution level was low. Record at 320. Further, the doctor stated that although plaintiff was never hospitalized because of his asthma, it was only plaintiff's stoicism and non-complaining nature that kept him out of the hospital. Record at 312–13, 322–24.

Two other medical opinions were submitted at the Secretary's request, by Dr. Norman Cagin and Dr. Bobrosav Matiasevic. Dr. Matiasevic examined plaintiff on November 10, 1981. Record at 260. Dr. Cagin examined plaintiff on January 4 and 26, 1982, and observed that plaintiff was a "chronically ill appearing man." Record at 264–65. Both doctors diagnosed bronchial asthma, observed that plaintiff wheezed despite heavy medication, and stated that plaintiff's lungs did not clear after bronchodilation. The two reports also cite spirometric values which reflect severe pulmonary dysfunction, manifested as well by Dr. Cagin's exercise tolerance (treadmill) test which had to be stopped after only one minute due to plaintiff's shortness of breath. Record at 260–74. Despite these

---

**1.** One of Dr. Gribetz's articles concerned bronchoscopy, Record at 309, which is the examination of the bronchi (the large air passages in the lungs) through a tracheal wound or through a bronchoscope (an instrument used to examine the inside of the bronchi). *Dorland's Illustrated Medical Dictionary* (24th ed. 1965) p. 222.

findings, Dr. Matiasevic stated on the "Physical Capacities Evaluation" form that plaintiff could continuously bend, squat and reach above shoulder level, frequently crawl and occasionally climb. Record at 262. The doctor also stated that plaintiff could occasionally carry 11–20 pounds, and continuously carry up to 10 pounds. The doctor noted that plaintiff's activities were only mildly restricted by marked changes in temperature and humidity, and not restricted at all by exposure to dust, fumes and gases.

Dr. Gribetz agreed with the findings of the two reports but not with the conclusions drawn therefrom. Record at 301. The doctor stated that asthma is an episodic illness which could not be evaluated properly on the basis of one or two spirometric examinations. Record at 302. Therefore, Dr. Gribetz contended, the objective findings of Drs. Cagin and Matiasevic could have understated plaintiff's condition. *Id.* Dr. Gribetz considered Dr. Matiasevic's evaluation of plaintiff's physical capacity "absurd" and inconsistent with the objective findings of the three doctors. Record at 303–304. Further when Dr. Gribetz re-examined plaintiff on March 30, 1982, plaintiff exhibited a similar degree of wheezing and shortness of breath as the doctor had observed during the period of treatment between 1979 and 1981. Record at 301. Dr. Gribetz found plaintiff's asthmatic condition remained severe. *Id.*

### ALJ's Findings

The ALJ afforded great weight to Dr. Gribetz's deposition and affidavit, and to hospital records which revealed that allergies placed environmental restrictions upon plaintiff. Record at 161. The ALJ also observed plaintiff's asthma attack, which occurred near the end of the hearing. Record at 221. The ALJ found plaintiff's subjective complaints of discomfort credible in light of all the evidence, and determined that plaintiff could not perform his past work. The ALJ determined that ability to perform basic work-related functions was limited by his severe impairment. Finding Nos. 2 & 4, Record at 161. The ALJ stated that plaintiff had been under a "disability" as defined in the Social Security Act, since November 20, 1978, the day plaintiff left Mount Sinai. Finding No. 5, Record at 161. The ALJ, therefore, found plaintiff to be entitled to disability insurance benefits and SSI benefits, and issued his recommended decision to the Council on April 19, 1982. Record at 162.

### Council Decision

The Council did not adopt the ALJ's decision. It agreed that plaintiff could not perform his past work. Finding No. 7, Record at 156. The Council found, however, that plaintiff's impairments, whether considered singly or in combination, were not severe enough to prevent him from "substantial gainful work" in "sedentary" occupations performed in a relatively clear environment. Record at 153.

The Council first found that plaintiff's Mount Sinai Chest Clinic records did not support Dr. Gribetz's evaluation of plaintiff's frequent uncontrollable wheezing and shortness of breath. Record at 154. In support of its conclusion the Council cited isolated visits over the two year treatment period, the spirometric readings, the lack of severity of plaintiff's condition and the kind and amount of medication prescribed on each occasion. *Id.* The Council concluded that since plaintiff partially responded to medication on some occasions, Dr. Gribetz's contention that plaintiff's condition was uncontrollable was not supported by the evidence. *Id.* Further, the Council found unpersuasive both plaintiff's subjective complaints of discomfort and Dr. Gribetz's assertion that plaintiff's condition just happened to be good on the three days he was seen by the two consultative physicians. *Id.* Based on objective testing performed at the consultative examinations, the Council found that plaintiff's condition was not severe enough to satisfy the medical criteria for either chronic or episodic asthma under sections 3.02 or 3.03 of Appendix 1 of the Social Security Act. Accordingly, the Council found that plaintiff had the residual functional capacity to do sedentary work. Record at 156.

The Council next turned to the medical-vocational guidelines in Appendix 2, Table 1, which determine a claimant's maximum sustained capability to do sedentary work based on the claimant's age, work experience, and education. The Council took administrative notice of 15 sedentary jobs which it claimed plaintiff could perform in a clear environment. Record at 351. The Council gave plaintiff written notice and an opportunity to contest his ability to perform any of the listed jobs. Record at 352–53. In a letter dated July 19, 1982, plaintiff strenuously objected to the Council's consideration of his residual functional capacity. Record at 354–57. He argued that the medical evidence conclusively demonstrated that he had severe bronchial asthma which, despite maximum medication, caused constant wheezing and frequent acute attacks (including one in the ALJ's courtroom). The letter also objected to the Council's failure to consider plaintiff's difficulty in commuting to any job since he is unable to walk more than a single block without shortness of breath, as confirmed by both plaintiff's treating physicians and one of the government-appointed physicians. Record at 356. Plaintiff claimed, therefore, that he was disabled on medical grounds alone, and that his residual functional capacity need not be evaluated.[2] Even if it were proper to consider his residual functional capacity, plaintiff stated in his letter that he met the criteria to be considered "disabled" under Rule 201.17, Table 1 (45–49 years of age, unskilled and illiterate *or* unable to communicate in English). The Council disagreed, stating that "illiteracy" meant the inability to read or write in any language; because plaintiff could read and write Spanish and could speak some English, the Council reasoned he was neither "illiterate" nor "unable to communicate in English." The Council found that plaintiff's situation more closely approached that described in Rule 201.18 (45–49 years of age, unskilled and literate *and* able to communicate in English), and

that therefore plaintiff was not disabled. Finding No. 8, Record at 156.

## DISCUSSION

 In order for an individual to be entitled to disability insurance and SSI benefits, he must carry the initial burden of proving that he is disabled from performing his prior work. 42 U.S.C. § 423(d)(5) (1974 & Supp.1983); *Parker v. Harris*, 626 F.2d 225, 231 (2d Cir.1980).

The Secretary found that plaintiff had carried this initial burden of proof. Finding No. 7, Record at 156. The Secretary determined, however, that plaintiff had the residual functional capacity to perform "substantial gainful work" in sedentary occupations and was therefore not disabled within the meaning of the Social Security Act. Finding No. 8, Record at 156. The Secretary's decision will be upheld if it is supported by substantial evidence in the record. 42 U.S.C. § 405(g) (1974 and Supp. 1983). Substantial evidence is "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401, 91 S.Ct. 1420, 1427, 28 L.Ed.2d 842 (1971), quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229, 59 S.Ct. 206, 216, 83 L.Ed. 126 (1938).

### 1. Medical Findings

 The Secretary found that plaintiff's condition was not severe enough to constitute a disability. Finding Nos. 4 and 6, Record at 156. It is well settled that subjective discomfort "may serve as the basis for establishing disability, even if such pain is unaccompanied by positive clinical findings or other 'objective' medical evidence." *Marcus v. Califano*, 615 F.2d 23, 27 (2d Cir.1979). Similarly, the expert opinion of a treating physician as to the existence of the disability is binding on the factfinder unless contradicted by substantial evidence. *Leftenant v. Schweiker*, 543

---

**2.** Plaintiff mistakenly refers to section 103, Appendix 1 of the Social Security Administration's medical guidelines. That section describes res-

piratory ailments in children. Section 3.00 describing adult respiratory ailments is the proper section, which I consider herein.

F.Supp. 989, 993 (S.D.N.Y.1982) citing *Eiden v. Secretary of HEW*, 616 F.2d 63, 64 (2d Cir.1980). To overcome the force of a claimant's subjective complaint of discomfort and his treating physician's opinion as to the existence of a disability, there must be substantial counter evidence. *Leftenant v. Schweiker*, 543 F.Supp. at 993 (citing *Marcus v. Califano*, 615 F.2d at 27).

■ Although the ALJ found plaintiff's subjective complaints of discomfort credible, Record at 161, the Council stated:

the claimant's allegations concerning his symptoms and the limitations imposed by his conditions are not credible to the extent that they establish functional restrictions that preclude sedentary work because no impairment of that level of severity has been demonstrated by the medical evidence or the facts related at the hearing. One of the crucial criteria in evaluating subjective complaints is the medical evidence of impairment.

Record at 156. The Council's decision was made without the opportunity to observe the plaintiff's demeanor during his testimony. *See Hankerson v. Harris*, 636 F.2d 893, 896 & n. 3 (2d Cir.1980); *Marcus v. Califano*, 615 F.2d at 27; *Reyes v. Harris*, 486 F.Supp. 1063, 1068 (S.D.N.Y.1980). Further, the Council discounted plaintiff's satisfactory thirteen year work record at Mount Sinai. Plaintiff had been employed by the hospital in several departments. When plaintiff's asthma curtailed his physical activity the hospital found a job for him delivering blood samples. Plaintiff's record of regular work activity despite his worsening physical condition, "justifies the inference that when he stopped working he did so for the reasons testified to." *Singletary v. Secretary of HEW*, 623 F.2d 217, 219 (2d Cir.1980). Plaintiff's credibility is further supported by Dr. Gribetz's characterization of plaintiff as a stoic who "tended to minimize his symptoms" and who "was obviously having difficulty even though he wasn't screaming about it." Record at 323.

The Council further failed to defer to Dr. Gribetz's opinion as to the existence of a disability, absent substantial evidence to the contrary. *Eiden v. Secretary of HEW*, 616 F.2d at 64. Dr. Gribetz, a board-certified expert in chest medicine, stated that in his ten years of practice during which he treated hundreds of asthmatics, he had never seen a case of asthma as severe as plaintiff's. Record at 302. The doctor noted that asthma is an episodic ailment, the severity of which could not be properly evaluated based on one or two spirometric examinations. According to Dr. Gribetz, therefore, plaintiff was limited to completely sedentary work, and would have frequent difficulty commuting to work.

The reports of Doctors Cagin and Matiasevic do not provide the substantial evidence necessary to outweigh Dr. Gribetz's opinion. While the spirometric findings alone did not compel a finding of disability, they did, by the two doctors' admissions, indicate serious pulmonary dysfunction. *Cf. Reams v. Harris*, 498 F.Supp. 802, 803–804 (E.D.N.C.1980). Indeed, Dr. Cagin described plaintiff as "a chronically ill appearing man." Record at 265. The two doctors' spirometric findings, moreover, were not inconsistent with Dr. Gribetz's opinion that the severity of an episodic disease cannot be determined from one or two isolated evaluations. *See Leftenant v. Schweiker*, 543 F.Supp. at 994. Further, neither consultative physician disputed Dr. Gribetz's opinion that plaintiff could perform only sedentary tasks and often would have substantial difficulty commuting to any job. *Id.* Dr. Matiasevic found that plaintiff (1) could occasionally carry eleven to twenty pounds and continuously carry up to ten pounds, (2) could occasionally climb, frequently crawl, and continuously bend, squat and reach above shoulder level, and (3) was only mildly restricted in his activities by marked changes in humidity or temperature, and completely unrestricted when exposed to dust, fumes, and gases. Record at 262. These findings, however, are inconsistent with Dr. Matiasevic's own objective findings, as well as the objective findings of Doctors Cagin and Gribetz. Finally, neither consultative physician made

any finding that plaintiff could or could not perform his prior work, while Dr. Gribetz stated that plaintiff could not perform any work, including his prior duties at Mount Sinai that required "significant exertion." Record at 317.

Thus, the evidence in its entirety, particularly plaintiff's subjective complaints and Dr. Gribetz's opinion, compels me to conclude that the Secretary's decision that plaintiff is not disabled based on the medical guidelines for bronchial asthma is not supported by substantial evidence, and cannot be upheld. In addition, I find an alternative basis for reversal based on the Secretary's medical-vocational guidelines.

*Medical-Vocational Guidelines*

The medical-vocational guidelines consider a claimant's age, education, and work experience. 20 C.F.R. § 404.1560(b)(1). Rule 201.17, Table 1, directs a conclusion of "disabled" for a person who is 45–49 years old, unskilled and limited to sedentary work, and "illiterate or unable to communicate in English." Plaintiff is a 49 year old unskilled laborer, who is unable to read or write English and needed an interpreter at his administrative hearings. Plaintiff asserts that even if he were found not disabled under the Secretary's medical criteria, he is *per se* disabled under the medical-vocational guidelines. The Secretary disagreed, and found that since plaintiff is "literate and ... able to communicate in English," Record at 155, then Rule 201.18, which directs a conclusion of "not disabled," applies. The Secretary contends that since plaintiff completed high school in Puerto Rico, and can read and write Spanish, he is "literate" within the meaning of the Social Security Act. Further, although plaintiff needed an interpreter at his hearings, the Secretary insists that plaintiff is "able to communicate in English." Rule 201.18.

██ It is clear that the term "illiteracy" in Rule 201.17 means illiteracy in English, not illiteracy in all languages. The Secretary's own guidelines state:

The term 'education' ... includes how well you are able to communicate in *Eng-*

*lish*, since this ability is often acquired or improved by education.

\* \* \* \* \* \*

Illiteracy means the inability to read or write.

\* \* \* \* \* \*

Because English is the dominant language of the country, it may be difficult for someone who doesn't speak and understand English to do a job, *regardless of the amount of education the person may have in another language*. Therefore, we consider a person's ability to communicate in English when we evaluate what work, if any, he or she can do. *It generally doesn't matter what other language a person may be fluent in.*

\* \* \* \* \* \*

We will ask you how long you attended school and *whether you are able to speak, understand, read and write in English.*

20 C.F.R. § 404.1564(b) (emphasis added). As the Secretary's rules establish, plaintiff's literacy in Spanish is irrelevant to his ability to find sedentary work in this country, where English is the dominant tongue. This is a nation of immigrants, where hundreds of languages and dialects are spoken. It would be an impossible administrative task for the Secretary to designate jobs specifically for the many claimants who are unable to read or write English, yet are literate in one of the numerous languages spoken in the United States. Plaintiff's illiteracy in English, therefore, places him squarely within Rule 201.17, which directs the conclusion that plaintiff is disabled. 20 C.F.R. § 404.1569.

## CONCLUSION

In sum, I find that the Secretary's decision denying plaintiff benefits is not supported by substantial evidence. The secretary's decision is hereby reversed. Plaintiff's motion for summary judgment is granted and this case is remanded to the Secretary for calculation and payment of benefits.

SO ORDERED.