Benita DONATO, Plaintiff-Appellant,

v.

SECRETARY OF the DEPARTMENT OF HEALTH AND HUMAN SERVICES OF the UNITED STATES, Defendant-Appellee.

No. 257, Docket 83–6004.

United States Court of Appeals, Second Circuit.

Argued Sept. 26, 1983.

Decided Nov. 10, 1983.

Nicholas G. Garaufis, New York City, for plaintiff-appellant.

Kevin P. Simmons, Asst. U.S. Atty., Brooklyn, N.Y. (Raymond J. Dearie, U.S. Atty., for the E.D.N.Y., Rodger C. Field, Asst. U.S. Atty., Brooklyn, N.Y., of counsel), for defendant-appellee.

Before MANSFIELD, KEARSE and WINTER, Circuit Judges.

MANSFIELD, Circuit Judge:

Bonita Donato (Donato) appeals from a judgment of the Eastern District of New York, entered *sua sponte* by Judge Mark A. Costantino on December 22, 1982, affirming a decision of the Secretary of Health and Human Services (HHS), dated April 14, 1982, denying her application for supplemental security income disability benefits under the Social Security Act and dismissing her complaint filed pursuant to 42 U.S.C. § 405(g). The Secretary denied benefits on the ground that Mrs. Donato was not disabled within the meaning of 42 U.S.C. § 1382c(a)(3)(A).[1] We reverse and remand for further proceedings.

---

1. Title 42 U.S.C. § 1382c(a)(3)(A) and (B) provide in pertinent part:

"(3)(A) An individual shall be considered to be disabled for purposes of this subchapter

On November 6, 1980, Mrs. Donato, then a 63-year old non-English speaking Hispanic widow with a fifth grade education in the Dominican Republic, filed an application with HHS (then HEW) for supplemental security income based on her claim that since August 11, 1980, she had been physically disabled from engaging in gainful employment. At that time she was not gainfully employed and depended upon her married daughter for support. Prior to August 11, 1980, she had been employed for 20 months making artificial flowers by hand, "[s]ometimes standing up, sometimes sitting" but with more time standing than sitting. In support of her application Mrs. Donato stated in writing (under penalty of criminal punishment if false) that she suffered from hypertension, vertigo, angina pectoris and degenerative osteoarthritis. She represented that in 1979 and 1980 she had worked in an artificial flower factory doing packing and cutting machine work and in 1978 had worked in a factory cleaning toys. She further represented that in 1979 she had begun to suffer from arthritis in her hands and legs and finally had to stop work on August 11, 1980, because of hypertension and angina. She also stated that she could not do any heavy chores around the house or lift heavy objects, that she was unable to walk more than 2–3 blocks because of pressure in her chest, that she suffered from headaches and dizziness most of the time, and that she experienced constant pain in her hands and legs.

On October 29, 1980, shortly before Mrs. Donato filed her application, Dr. Herbert Wiener, Mrs. Donato's treating physician, signed a Disability Certificate confirming her basic medical disability as represented by her and certifying that she was "totally incapacitated." In December 1980, physicians at the New York Diagnostic Center conducted a comprehensive examination of Mrs. Donato that included a physical examination, X-rays of chest, spine and hands, electrocardiogram and treadmill tests, and laboratory work. Appellant's EKG and treadmill tests were diagnosed as being within normal limits. Her heart sounded normal. X-rays indicated an osteoarthritis degenerative disease in the lumbar area of her spine, an elongation and uncoiling of the thoracic aorta, and conditions in the lungs (calcification, blunting, nodule) involving loss of lung volume that was "probably secondary to old healed tuberculosis." The Center's impressions were "Hypertension, poorly controlled," "Chest pains, of uncertain etiology" and "Degenerative joint disease, mild." It reported her able to sit for 8 hours per day, stand 2 to 4 hours per day, walk one to two hours per day, and occasionally lift or carry up to 20 pounds. On the basis of this report HHS determined on December 30, 1980 that Mrs. Donato was not eligible for the requested supplemental security income payments and so advised her by letter dated March 2, 1981.

Mrs. Donato requested reconsideration and a hearing. On June 10, 1981, physicians at Broadway Park Medical conducted a further medical examination of her and concluded that she had "Hypertensive cardiovascular disease, with questionable history of myocardial infarction" and "Osteoarthritis lumbosacral spine, probable minimal osteoarthritis of the knees and ankles." She was found to have "extensive pleural calcification" in the right lung with scarring and volume loss consistent with old, healed tuberculosis. Although she ap-

---

if he is unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months (or, in the case of a child under the age of 18, if he suffers from any medically determinable physical or mental impairment of comparable severity).

"(B) For purposes of subparagraph (A), an individual shall be determined to be under a disability only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work."

peared to have a full range of motion she had pain on passive or active movement of her knees. A 4-minute treadmill stress test, which was curtailed because of a "dizziness episode," was negative.

On November 18, 1981, a short hearing was held by Administrative Law Judge James Manos of the Office of Hearings and Appeals, Social Security Administration, HHS. Mrs. Donato, who was unrepresented, testified through an interpreter that in August 1980 she had left her factory job making artificial flowers because of back pain, chest pain and shortness of breath, which made it impossible for her to remain standing or sitting for more than 20 minutes at a time or to walk for more than 2–3 blocks and then very slowly. If she stood longer than 15–20 minutes her legs would start hurting. She suffered cramps when she stood up or lay in bed for any substantial length of time. She could occasionally lift up to 10 pounds but could cook or take a bath only with great difficulty, requiring help from others. Her son-in-law (Jesus Soriano) corroborated her testimony, stating:

"A. The problem, you know, after she got sick, she didn't have the ability to do almost nothing. She gets tired when she walks. Her legs get mushy. She gets dizzy sometimes. When she goes outside to walk you have to take her because she cannot go. Her nerves are affected sometimes. And she also says that her back hurts and that she gets dizzy every now and then. When she goes to the bathroom she has problems getting into the bathtub. Sometimes when she's eating she, she says she has problems because she gets nauseous." (App. 30, 31).

No other oral testimony was taken. Medical records of Dr. Wiener, Mrs. Donato's treating physician, were later obtained by subpoena. They consisted mainly of his notations of findings and prescriptions in the course of bimonthly examinations of Mrs. Donato during the period from August 11, 1980 to November 20, 1981, which revealed that he had found her to be suffering from angina pectoris, hypertension, ver-

tigo, high blood pressure, insomnia, elbow pain, knee pain, precordial pain and degenerative osteoarthritis. Dr. Wiener prescribed various drugs to treat these disabilities, including Hygroton for blood pressure, K–lyte # 30, Motrin, nitroglycerine under the tongue for chest pain, Corgard and Tifenet for headaches, Valium, E Mycin and Inderal. In a general medical report to the New York State Department of Social Services dated May 6, 1981, Dr. Wiener had advised that an electrocardiogram of Mrs. Donato done on March 25, 1981, revealed a "flattened T wave in lead VI" and her chest X-ray showed a "tortuous aorta."

On April 4, 1982, ALJ Manos filed his decision concluding that Mrs. Donato was not eligible for supplemental security income under 42 U.S.C. § 1382c(a)(3)(A) because she was "not under a 'disability,' as defined in the Social Security Act." After reviewing the oral testimony and medical findings the ALJ stated:

"Claimant's allegations of chest pain, back pain, dizziness, and arthritis are somewhat corroborated by medical evidence. The physician's reports include sufficient evidence of high blood pressure to support a diagnosis of hypertension. Her back pain is apparently the result of osteoarthritis of the lumbosacral spine. This diagnosis is indicated in several medical reports interpreting her X-rays. Claimant's complaints of chest pain is [sic] not supported by medical evidence. One physician noted that it did not seem anginal in nature and he doubted her reported history of a heart attack.

"Chest X-rays revealed only a prior history of tuberculosis. Based on this medical evidence I conclude that claimant has a severe impairment which includes back pain and hypertension. These impairments would significantly limit her physical or mental ability to do basic work activities. 20 CFR § 416.920(c)." (App. 9–10).

However, the ALJ found that her disability did not prevent her "from engaging in light work" because, according to some medical evidence, she retained the ability to sit for

up to 4 hours per day, to stand for up to 2 hours, occasionally to lift or carry up to 20 pounds, and grasp, push, pull and manipulate with both hands. He found that since artificial flower-making did not require lifting or carrying heavy objects she was able to return to that type of work. However, in reaching this conclusion the ALJ discounted the medical records of Dr. Wiener, Mrs. Donato's treating physician. He found that Wiener had "failed to include copies of the EKG studies or X-ray reports" and "[t]herefore, his diagnosis of hypertension, palpation [sic], vertigo, angina and degenerative osteoarthritis is not supported by documented evidence." On June 22, 1982, the decision was affirmed by the Appeals Council of the Office of Hearings and Appeals, HHS.

On August 13, 1982 Mrs. Donato filed her *pro se* complaint in the district court pursuant to § 205(g) of the Social Security Act, 42 U.S.C. § 405(g), seeking review and reversal of the Secretary's decision. On December 16, 1982, the Secretary filed her answer and on December 20, 1982, Judge Costantino ruled *sua sponte* at a conference with "Counsel on both sides present"[2] that he would affirm the ALJ's decision. Two days later he did so by a two-sentence order stating that the Secretary's determination was supported by substantial evidence. From this judgment Mrs. Donato appeals.

## DISCUSSION

■ A claimant seeking SSI disability payments under Title XVI of the Social Security Act bears the burden of proving disability, *Decker v. Harris,* 647 F.2d 291, 293 (2d Cir.1981), and must furnish such medical and other evidence as the Secretary may reasonably require to establish that disability. 42 U.S.C. § 423(d)(5). This burden is initially met "by making a prima facie showing of physical impairment sufficiently severe to preclude [the claimant's]

return to his prior employment," *Decker v. Harris, supra,* 647 F.2d at 293–94; *Parker v. Harris,* 626 F.2d 225, 231 (2d Cir.1980). A finding by the Secretary that a claimant has not shown disability is conclusive if supported by substantial evidence, 42 U.S.C. §§ 405(g), 1383(c)(3); i.e., by "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."[3] *Richardson v. Perales,* 402 U.S. 389, 401, 91 S.Ct. 1420, 1427, 28 L.Ed.2d 842 (1971) (quoting *Consolidated Edison Co. v. NLRB,* 305 U.S. 197, 229, 59 S.Ct. 206, 216, 83 L.Ed. 126 (1938)); *Parker v. Harris, supra,* 626 F.2d at 231–32. In addition we must be satisfied that the claimant has had "a full hearing under the Secretary's regulations and in accordance with the beneficent purposes of the Act." *Gold v. Secretary of HEW,* 463 F.2d 38, 43 (2d Cir.1972). Indeed where, as here, "the claimant is handicapped by lack of counsel, ill health, and inability to speak English ... the courts have a duty to make a 'searching investigation' of the record." *Gold, supra,* 463 F.2d at 43 (quoting *Miracle v. Celebrezze,* 351 F.2d 361, 382–83 (6th Cir.1965)). In such a case "the ALJ has a 'duty ... to scrupulously and conscientiously probe into, inquire of, and explore for all the relevant facts....'" *Hankerson v. Harris,* 636 F.2d 893, 895 (2d Cir.1980) (quoting *Gold v. Secretary of HEW, supra,* 463 F.2d at 43).

■ As we recently noted in *Schauer v. Schweiker,* 675 F.2d 55 (2d Cir.1982), the concept of burden of proof is "particularly elusive in cases involving social security benefits," in part because the proceedings "are not designed to be adversarial" and certainly are not likely to be such when the claimant, as here, is unrepresented. *Id.* at 57. In making his inquiry, the ALJ must make credibility findings when there is conflicting evidence with respect to a material issue such as pain or other disability. If the claimant is found credible, his/her subjec-

2. The docket notation of "counsel on both sides" is puzzling since Mrs. Donato was unrepresented.

3. Since the standards for determination of disability and for judicial review in cases under 42

U.S.C. § 423 and 42 U.S.C. § 1382c(a)(3) are identical, decisions under these sections are cited interchangeably. *See Hankerson v. Harris,* 636 F.2d 893, 895 n. 2 (2d Cir.1980).

tive pain may not be disregarded. "[S]ub-jective *pain* may serve as the basis for establishing disability, even if . . . unaccompanied by positive clinical findings or other 'objective' medical evidence." *Marcus v. Califano,* 615 F.2d 23, 27 (2d Cir.1979) (emphasis in original). Moreover, "[t]he ALJ's apparent rejection of the treating physicians' medical conclusions must be evaluated under the rule that '[t]he expert opinions of a treating physician as to existence of a disability are binding on the fact finder unless contradicted by substantial evidence to the contrary.' *McLaughlin v. Secretary of H.E.W.,* 612 F.2d 701, 705 (2d Cir.1980) (*quoting Bastien v. Califano,* 572 F.2d 908, 912 (2d Cir.1978))," *Aubeuf v. Schweiker,* 649 F.2d 107, 112 (2d Cir.1981).

In sum, in a case like this the ALJ must not only develop the proof but carefully weigh it. In the present case the record indicates that he did not fully observe these principles in some material respects. In the first place he failed to make any credibility findings with respect to the written statements and oral testimony of Mrs. Donato, given under penalty of perjury if false and corroborated by the testimony of her son-in-law, that she could not continue working at her factory job or stand, sit, or walk for any substantial periods of time because of back pain, chest pain, shortness of breath, and dizziness. Moreover, this testimony was supported by the medical records of her primary physician, Dr. Wiener, who noted these disabilities during her bimonthly office visits and treated them over a period of at least 15 months.

■ In our view it was error for the ALJ to disregard Dr. Wiener's diagnosis that she was completely incapacitated merely because he failed to include copies of his EKG studies or X-ray reports in response to the ALJ's post-hearing subpoena. Under the circumstances the ALJ owed a duty to make further efforts to obtain these records and elicit the oral testimony of Dr. Wiener, whose diagnosis would ordinarily be entitled to considerable weight. *Aubeuf v. Schweiker, supra,* 649 F.2d at 112. Indeed, we have regarded a treating physician's di-

agnosis, to the extent that it is uncontradicted, as binding. *Singletary v. Secretary of HEW,* 623 F.2d 217, 219 (2d Cir.1980); *Eiden v. Secretary of HEW,* 616 F.2d 63, 64 (2d Cir.1980); *Bastien v. Califano,* 572 F.2d 908, 912 (2d Cir.1978) ("[t]he expert opinions of a treating physician . . . are binding on the factfinder unless contradicted by substantial evidence to the contrary.").

■ Moreover, before deciding whether Mrs. Donato was physically capable of resuming her factory work, the ALJ, in fulfillment of his "heightened duty" to explore for all relevant facts, *Echevarria v. Secretary of HHS,* 685 F.2d 751, 755 (2d Cir. 1982), should have inquired further into the nature and extent of the physical exertion required of her by her former job, the number of hours she worked each day, the length of time she stood for any one period, the distance she would be required to walk in commuting to work, and the like. The present record shows only that her job required her to do more standing than sitting. Even if one accepted the residual capacity evaluation of the New York Diagnostic Center and Broadway Park Medical to the effect that she could stand up to 2–4 hours per day rather than her testimony that she could stand only 20 minutes before having to sit or lie down, she might still be unable to satisfy the job's standing requirement for an 8-hour day.

■ Finally, the findings of the non-treating physicians who examined Mrs. Donato, although inconsistent in some respects with those of Dr. Wiener, are not so completely at odds with his diagnoses and her subjective complaints as to present a clear-cut case relieving the ALJ of the necessity of determining her credibility and that of her son-in-law or of making further inquiry in an effort to resolve the differences. All parties, including the ALJ, found that she suffered from serious impairments (hypertension, osteoarthritis, back pain). Although angina was rejected by doctors at Broadway Park Medical and the New York Diagnostic Center after stress tests, one doctor (Fox) stated that it was difficult to obtain an accurate cardiac history from

**420**

Mrs. Donato because of the language barrier and another (Aldersberg) was unable to verify her statement that in August 1980 she had suffered a heart attack.

In view of the ALJ's failure in this close case to make credibility findings and to inquire further into relevant facts we cannot conclude that his findings are supported by substantial evidence. Accordingly, we reverse the judgment of the district court and remand the case to the Secretary for further proceedings consistent with this opinion. Since it has now been three years since Mrs. Donato applied for supplemental disability benefits we urge the Secretary to proceed promptly upon remand so that any possible injustice to her may be minimized.

Reversed and remanded.