Robert WALKER, Plaintiff,

v.

Margaret M. HECKLER, Secretary of Health and Human Services, Defendant.

No. 82 Civ. 7710.

United States District Court, S.D. New York.

May 23, 1984.

820

Frankel & Eidman, New York City, for plaintiff; Michael S. Frankel, New York City, of counsel.

Rudolph W. Giuliani, U.S. Atty., S.D. N.Y., New York City, for defendant; Susan M. Campbell, Asst. U.S. Atty., New York City, of counsel.

## OPINION

EDWARD WEINFELD, District Judge.

These are cross-motions for judgment on the pleadings in an action brought by the plaintiff pursuant to 42 U.S.C. § 405(g), for review of a final determination of the Secretary of Health and Human Services ("the Secretary") denying plaintiff's application for disability insurance benefits. Plaintiff claims to be disabled as a result of a brain tumor, which was removed by surgery in 1970. Because plaintiff last met the special earnings requirement of the Social Security Act[1] on June 30, 1959, in order to qualify for benefits, plaintiff must establish that the tumor removed in 1970 existed on or before the cutoff date in 1959.[2]

---

**1.** 42 U.S.C. § 423(c)(1)(B)(i) states that an "individual shall be insured for disability insurance benefits in any month if ... he had not less than 20 quarters of coverage during the 40-quarter period which ends with the quarter in which such month occurred."

**2.** In their memoranda of law and oral arguments, the parties devoted most of their attention to whether plaintiff was required, as a second step, to prove that the tumor reached disabling severity, i.e., precluded plaintiff from engaging in substantial gainful activity, before June 30, 1959. Plaintiff maintains that he must

Plaintiff asserts that he met his burden of proof. However, after a hearing at which plaintiff was represented by counsel, the ALJ determined that plaintiff had no medically determinable impairment on that date. The Secretary maintains that the ALJ's determination was supported by substantial evidence and must be affirmed by this Court.

## THE EVIDENCE BEFORE THE ALJ:

The ALJ heard testimony from the plaintiff, his wife, and Dr. Rupert Green, one of plaintiff's personal physicians. The testimony indicated that plaintiff was born in 1919, completed the tenth grade, and worked as a merchant marine from 1942 to 1960. According to plaintiff, he had trouble working throughout the 1950's because he was "getting fired all the time ... [because he] didn't have the pep and the zing of other workers ... [he] was sleeping all the time and ... had this itching and vomiting ... [and] was like a living dead man." [3] His difficulties included, according to his testimony, confusion, headaches, itching, vomiting, double vision, and pains in the back.[4] Plaintiff states that his sporadic work history throughout the 1950's was due to his physical condition, and to the fact that he had been blacklisted from 1954 to 1957, and again from June, 1957 to 1960, because he belonged to or was sympathetic with the American Labor Party.[5]

Plaintiff's wife, who had been separated from plaintiff since 1970, testified that plaintiff had a seizure in 1946 or 1947 and was unconscious for about ten minutes.[6] She stated that he did not seek medical treatment for the seizure because they "were both young [and] thought nothing of it" and because they assumed that the seizure was caused by plaintiff's drinking earlier in the evening.[7] She testified that plaintiff began vomiting frequently in 1953 or 1954, and that he then began to complain of headaches and tiredness. She stated that his complaints got steadily worse, and that the vomiting was not relieved until plaintiff's brain surgery in 1970.[8]

Dr. Green testified that he had treated plaintiff between 1956 and 1970 for various ailments, including a recurring cough, pain on the right side of the neck, a rash, muscle pains, recurring pain in the shoulders, dizziness and distress of ears, a recurring sensation of weakness in the right leg, dizziness and lightheadedness, headaches, and a decreased attention span.[9] Dr. Green did not at any time detect the tumor that was removed in 1970, and testified that based upon his treatment of the plaintiff prior to 1970, he could not state with a reasonable degree of medical accuracy whether the plaintiff was suffering from the brain tumor on June 30, 1959.[10] He stated further that plaintiff had a "fixed stare" perhaps as early as 1957 that could have been caused by "anything causing pressure, including a tumor." [11] He also testified that the neck pains, rash, cough, and dizziness and distress of ears that plaintiff complained about in the late 1950's and the 1960's all are consistent with, but

---

prove only that he is now disabled and that his present disability had its genesis in a condition that existed while plaintiff was insured. *See Cassel v. Harris,* 493 F.Supp. 1055 (D.Colo.1980). The Secretary asserts that the plaintiff must prove that the tumor became disabling before the expiration of plaintiff's insured status. *See Gold v. Secretary of Health, Education and Welfare,* 463 F.2d 38 (2d Cir.1972); *Rodriguez v. Califano,* 431 F.Supp. 421 (S.D.N.Y.1977). The Court need not reach that issue, because, as indicated *infra,* remand is required for the ALJ's reconsideration of the initial question of whether the tumor existed at all in 1959.

3.  Record at 115.

4.  Record at 117.

5.  Record at 114, 136–40. *See generally Parker v. Lester,* 227 F.2d 708 (9th Cir.1955); *Barninger v. National Maritime Union,* 372 F.Supp. 908 (S.D.N.Y.1974); *Berman v. National Maritime Union,* 166 F.Supp. 327 (S.D.N.Y.1958).

6.  Record at 153.

7.  Record at 154.

8.  Record at 154–57.

9.  Record at 57–77, 87.

10.  Record at 89.

11.  Record at 90–92, 94–98.

do not necessarily indicate, the existence of a brain tumor at that time.[12]

After the hearing closed, plaintiff's counsel submitted to the ALJ an affidavit from Dr. Vallo Benjamin, the surgeon who removed plaintiff's tumor in 1970. The affidavit states that Dr. Benjamin had been advised of Mrs. Walker's testimony that plaintiff had a seizure in the late 1940's and had complained of headaches and dizziness thereafter. Dr. Benjamin then stated:

> Premised upon such information and in view of my findings relative to this patient in 1970, I can state with an overwhelming [degree] of medical certainty that if such symptoms did exist that Mr. Walker had the tumor which I removed in 1970 at the time of the existence of the above stated symptoms.[13]

In addition to Dr. Benjamin's affidavit, the record before the ALJ included several hundred pages of medical records from Dr. Green and Dr. Benjamin, and from various other doctors and hospitals that had treated plaintiff since the 1940's.

On the basis of this evidence, the ALJ concluded that plaintiff had not proved the presence of a significant medical impairment prior to June 30, 1959. The ALJ rejected Mrs. Walker's testimony regarding the alleged seizure, and the testimony of both the Walkers about the dizziness, headaches and vomiting plaintiff allegedly suffered throughout the 1950's, stating that there was no "acceptable diagnostic or clinical evidence" supporting the Walkers' testimony, and that it lacked credibility. The ALJ also rejected the affidavit of Dr. Benjamin because it lacked "documentary support and persuasiveness." He then found that "the persuasive medical evidence establishes that the first indication of a significant functional involvement occurred in June, 1970, when claimant was hospitalized [for the removal of the tumor]."

DISCUSSION:

The factual findings of the Secretary, if supported by substantial evidence on the record as a whole, are conclusive.[14] Substantial evidence is such "relevant evidence as a reasonable mind might accept as adequate to support a conclusion."[15] While the substantial evidence standard "implies deference to the expertise of the agency,"[16] the courts "retain a responsibility to conduct a searching inquiry and to scrutinize the entire record, having in mind that the Social Security Act ... is remedial in purpose."[17] Further, the Court "must be satisfied that the claimant has had a 'full hearing under the Secretary's regulations and in accordance with the beneficiant purposes of the Act.'"[18] The Court must be satisfied as well that the ALJ evaluated the evidence in accord with the law.[19] While this matter has been before the Secretary and the courts for a very extended period,[20] the Court is persuaded, after a word-by-word study of the record, that the ALJ did not evaluate the evidence in accord with the law of this Circuit, and that he did not fulfill his obligation to ensure that plaintiff had a full and fair hearing.

█ The major evidence supporting plaintiff's claim was Dr. Benjamin's affidavit. The ALJ disregarded Dr. Benjamin's

---

12. Record at 99–102.

13. Record at 491–92.

14. *Bluvband v. Heckler,* 730 F.2d 886, at 891 (2d Cir.1984); *Rivera v. Schweiker,* 717 F.2d 719, 723 (2d Cir.1983).

15. *Richardson v. Perales,* 402 U.S. 389, 401, 91 S.Ct. 1420, 1427, 28 L.Ed.2d 842 (1971) (*quoting Consolidated Edison Co. v. NLRB,* 305 U.S. 197, 229, 59 S.Ct. 206, 216, 83 L.Ed. 126 (1938)); *Bluvband,* at 891–92; *McBrayer v. Secretary of Health and Human Services,* 712 F.2d 795 (2d Cir.1983); *Leftenant v. Schweiker,* 543 F.Supp. 989, 990 (S.D.N.Y.1982).

16. *Rivera,* 717 F.2d at 723.

17. *McBrayer,* 712 F.2d at 798.

18. *Bluvband,* at 892 (*quoting Gold v. Secretary of Health, Education and Welfare,* 463 F.2d 38, 43 (2d Cir.1972)).

19. *Marcus v. Califano,* 615 F.2d 23, 27 (2d Cir. 1979); *see also Bluvband,* at 891–92; *Dumas v. Schweiker,* 712 F.2d 1545, 1550 (2d Cir.1983).

20. For a detailed description of the procedural history of plaintiff's claim, *see* Record at 12–13.

opinion, however, because it "lacked documentary support and persuasiveness." While it is not exactly clear what the ALJ meant by "documentary support,"[21] he states elsewhere that the symptoms upon which Dr. Benjamin based his opinion were not supported by "acceptable diagnostic or clinical evidence" and were "unestablished and undocumented." Thus, it appears that the ALJ rejected the opinion because it was not corroborated by clinical, laboratory, or diagnostic reports. It is well established in this Circuit, however, that "there is no requirement that the physician's medical testimony 'be supported by "objective" clinical or laboratory findings.' "[22] Here, Dr. Benjamin's opinion was based upon a report of plaintiff's symptoms during the relevant period. "A medical opinion does not become unacceptable ... simply because it is based upon a claimant's symptomology."[23] Indeed, "any medical diagnosis must necessarily rely upon the patient's history and subjective complaints."[24] The ALJ thus misapprehended the law in rejecting Dr. Benjamin's opinion because it was based upon plaintiff's symptomatology rather than on clinical or laboratory findings.[25]

The ALJ also rejected Dr. Benjamin's affidavit on the ground that "contrary [to Dr. Benjamin's opinion], the persuasive medical evidence establishes that the first indication of significant functional involvement occurred in June 1970, when the claimant was hospitalized." This "persuasive medical evidence" is not described or discussed in the ALJ's opinion, nor is it apparent from a reading of the record. The medical evidence in the record consists primarily of Dr. Green's testimony and records. Dr. Green stated that he could not determine, with a reasonable degree of medical certainty, that the complaints plaintiff brought to him in the late 1950's and early 1960's conclusively establish that the brain tumor was present at that time. However, Dr. Green also made clear that the complaints were consistent with the

---

21. The meaning of the ALJ's statement that Dr. Benjamin's opinion lacked "persuasiveness" also is far from clear. "Reviewing Courts should not have to guess about such fundamental matters. Nor should they have to infer the ALJ's determinations from suggestive or ambiguous comments, or to imply them from conclusions that permit more than one finding." *Chiappa v. Secretary of Health, Education and Welfare,* 497 F.Supp. 356, 358 (S.D.N.Y.1980).

22. *Bluvband,* at 893 (2d Cir.1984) (*quoting Eiden v. Secretary of Health, Education and Welfare,* 616 F.2d 63, 65 (2d Cir.1980)); *see also Cutler v. Weinberger,* 516 F.2d 1282, 1286–87 (2d Cir. 1975).

23. *Stark v. Weinberger,* 497 F.2d 1092, 1097 (7th Cir.1974); *see also Cutler v. Weinberger,* 516 F.2d at 1286–87; *Ramirez v. Schweiker,* 554 F.Supp. 1022, 1024 (S.D.N.Y.1983); *Culver v. Califano,* 502 F.Supp. 661, 668 (W.D.N.Y.1980); *Spicer v. Califano,* 461 F.Supp. 40, 45 (N.D.N.Y. 1978).

24. *Brand v. Secretary of Health, Education and Welfare,* 623 F.2d 523, 526 (8th Cir.1980).

25. An ALJ is free, of course, to reject a diagnosis based upon subjective complaints and symptoms if he or she finds that the claimant's description of those symptoms is not credible. *See Marcus v. Califano,* 615 F.2d 23, 27 (2d Cir.1979). Here, the ALJ stated that the testimony of plaintiff and his wife was not credible, but again his reason was that the testimony "was not supported by the documentary evidence." Just as a doctor's diagnosis cannot be disregarded solely because it is not supported by "objective" clinical or laboratory findings, "[d]isregard of a claimant's subjective complaints of pain ... is not justified solely because there exists no objective evidence in support of such complaints." *Id.* (*quoting Northcutt v. Califano,* 581 F.2d 164, 166 (8th Cir.1978)). *See also Donato v. Secretary of Health and Human Services,* 721 F.2d 414, 418–19 (2d Cir.1983).

The ALJ's rejection of the testimony regarding plaintiff's symptoms also appears to have been influenced by the ALJ's belief that "the claimant admitted that his lack of work was due to union trouble resulting from his political activity, as opposed to medical impairment" and that "the claimant testified that his lack of work from 1955 to 1960 was [not] in any significant way due to any medically-related functional impairment." Plaintiff made no such admissions on the record. To the contrary, when he was asked if he had been unemployed because of his health or because he had been blacklisted, the plaintiff repeatedly asserted that he could not work for both reasons, and went on to describe the physical ailments that prevented him from working. Record at 114–15, 126, 136–37, 140–41, 143.

existence of a tumor at that time.[26] Dr. Green's findings thus were not "so completely at odds with [Dr. Benjamin's] diagnos[i]s and [plaintiff's] subjective complaints as to present a clear-cut case relieving the ALJ of the necessity of ... making further inquiry to resolve the differences." [27]

The ALJ made no such inquiry. Despite the critical importance of the date upon which the tumor became disabling, the ALJ failed to take steps to develop the record on that issue. Dr. Benjamin was not called as a witness and questioned about his opinion. Nor was Dr. Green asked such obvious questions as whether he could determine when the tumor existed if he considered both his records of the plaintiff's complaints and Dr. Benjamin's records regarding the size and type of the tumor removed in 1970. It is plaintiff's burden to establish the existence of a disability,[28] and to subpoena witnesses with relevant evidence.[29] Nevertheless, the ALJ has a duty to develop the facts fully and fairly, and must "affirmatively assist the parties in developing the record." [30] The ALJ's duties are heightened when a claimant is pro se, but exist even when a claimant is represented by counsel.[31]

Dr. Benjamin's "overwhelming [degree] of medical certainty" should have given the ALJ pause, especially in view of the inconclusiveness and uncertainty of Dr. Green's testimony. However, instead of probing or exploring the two doctors' opinions in an effort to shed light on the critical question of how long plaintiff had suffered from the tumor, the ALJ simply rejected Dr. Benjamin's opinion under an erroneous standard, and allowed the record to remain too murky to support any considered resolution of the issue under proper standards. A close scrutiny of the entire record leaves one with a sense of unease about whether it was correctly decided in view of the testimony of the two doctors. Fairness requires that the ALJ develop the evidence from each doctor, analyze that evidence according to proper standards, and to the extent that the two opinions are contradictory, weigh the probative value of each. Accordingly, the matter is remanded for the taking of additional evidence on the issue of whether plaintiff's tumor existed in 1959, including the testimony of Dr. Benjamin, and for reconsideration of the evidence.[32]

So ordered.

---

**26.** Record at 99–102.

**27.** *Donato v. Secretary of Health and Human Services,* 721 F.2d 414, 419 (2d Cir.1983).

**28.** *Berry v. Schweiker,* 675 F.2d 464, 467 (2d Cir.1982). *Cf. Donato v. Secretary of Health and Human Services,* 721 F.2d 414, 418 (2d Cir.1983) ("[T]he concept of burden of proof is 'particularly elusive in cases involving social security benefits,' in part because the proceedings 'are not designed to be adversarial'....") (*quoting Schauer v. Schweiker,* 675 F.2d 55, 57 (2d Cir. 1982)).

**29.** *Fernandez v. Schweiker,* 650 F.2d 5, 8 (2d Cir.1981).

**30.** *Bluvband v. Heckler,* at 892 (2d Cir.1984); *see also Donato,* 721 F.2d at 418; *Hankerson v. Harris,* 636 F.2d 893, 895 (2d Cir.1980); *Gold v.*

*Secretary of Health, Education and Welfare,* 463 F.2d 38, 43 (2d Cir.1972).

**31.** *Cowart v. Schweiker,* 662 F.2d 731, 735 (11th Cir.1981); *Thorne v. Califano,* 607 F.2d 218, 219 (8th Cir.1979).

**32.** While Congress' 1980 amendment of 42 U.S.C. § 405(g), Pub.L. 96–265, § 307, 94 Stat. 458, limits the power of the District Courts to remand cases to the Secretary for the taking of additional evidence, the amendment "does not preclude remand when the Secretary has misapplied the law or failed to provide a fair hearing." *Carroll v. Secretary of Health and Human Services,* 705 F.2d 638, 644 (2d Cir.1983) (citations omitted).