Regina SALVATI, Plaintiff,

v.

Margaret M. HECKLER, Secretary of Health and Human Services, Defendant.

No. 82 Civ. 7534 (CHT).

United States District Court, S.D. New York.

April 7, 1986.

Davison F. Moore, Poughkeepsie, N.Y. by Jonathan E. Symer, for plaintiff.

Rudolph W. Giuliani, U.S. Atty., S.D.N.Y., New York City by David R. Lewis, Asst. U.S. Atty., for defendant.

TENNEY, District Judge.

The plaintiff, Regina Salvati ("Salvati"), brought this action under Section 205(g) of the Social Security Act ("Act"), as amended, 42 U.S.C. § 405(g) (1982), seeking review of a final determination of the Secretary of Health and Human Services ("Secretary"), denying Salvati federal disability insurance benefits. The parties have cross-moved for judgment on the pleadings pursuant to Fed.R.Civ.P. 12(c). The plaintiff claims that she is disabled because she suffers from a heart condition, chest pains, severe osteoarthritis of the hands and feet, and impaired vision. For the reasons set forth below, the Court concludes that the Secretary's determination is not supported by substantial evidence. The Secretary's decision is therefore reversed.

## BACKGROUND

The instant matter first came to this court in 1982, after the Secretary denied the plaintiff's application for disability insurance benefits. On appeal, the court remanded the case to the Secretary because a complete administrative record could not be prepared. The Appeals Council remanded the case to an Administrative Law Judge ("ALJ") for further proceedings.

The ALJ, who considered the matter *de novo*, held a hearing on February 23, 1984. The plaintiff was the only witness. On April 26, 1984, the ALJ issued a recommended decision, finding that the plaintiff was not disabled prior to March 31, 1981, the date on which the plaintiff last met the eligibility requirements for disability insurance.[1] The Appeals Council adopted the ALJ's recommended decision, and issued a

---

1. 42 U.S.C. § 423(c)(1)(B)(i) states that an "individual shall be insured for disability insurance benefits in any month if … he had not less than 20 quarters of coverage during the 40-quarter period which ends with the quarter in which such month occurred."

decision on July 31, 1984 denying plaintiff's claim. That decision is now before the Court.

The plaintiff, who was born in 1936, has a high school education and two years of college. Her prior work was clerical in nature, and included bookkeeping and typing. The plaintiff testified that she left her last position because of chest pains and dizziness, and because the arthritis in her hands prevented her from using a pen or pencil. The plaintiff testified that she suffers from arthritis in her hands, feet, legs and back, and she demonstrated that she could not make a fist with either hand, because of the arthritis and swelling in her fingers. She also testified that she continues to suffer from shortness of breath and chest pains, and that she suffers from headaches as a result of eyestrain. She testified that she is effectively blind in the left eye and that her right eye vision is blurry. She further testified to a progressive loss of weight and accompanying weakness.[2]

The medical evidence consists of reports from several physicians. The plaintiff's treating physician, Dr. C.C. Rametta, submitted a number of reports from 1980 to 1984. In a letter to the Appeals Council, dated September 15, 1980,[3] Dr. Rametta stated that Salvati suffered from a heart condition—mitral valve prolapse—and from chest pain, palpitations and arrhythmias. Dr. Rametta also indicated that Salvati had a significant condition of osteoarthritis, and he concluded that Salvati was "disabled from working in any capacity."

In a second report, dated March 2, 1981, Dr. Rametta diagnosed the plaintiff as suffering from mitral valve prolapse, arthritis of the hands and knees, and amblyopia of the left eye. He also reported that the plaintiff had intermittent angina. Dr.

Rametta concluded in that report that Salvati could do work requiring her to sit for eight hours per day, so long as the work did not require fine motor skills.

In 1982, Dr. Rametta wrote three letters in which he reported that Salvati suffered from a variety of physical ailments including: (1) mitral valve prolapse with associated chest pain, (2) angina with cardiac rhythm disturbances, (3) shortness of breath, (4) osteoarthritis of the hands with multiple spur formations, and (5) amblyopia of the left eye.[4] Dr. Rametta reported that Salvati was on medication to treat the mitral valve prolapse, and that she was being evaluated with regard to progressive weight loss. In each letter, Dr. Rametta stated that he believed Salvati to be completely and totally disabled. In March 1984, Dr. Rametta again stated that Salvati is "clearly and unequivocally disabled," and he stated that tests indicate that Salvati may be suffering from lupus disease.

Three reports were also submitted during 1981–1982 by Dr. A.A. Davachi, the doctor who treated Salvati for her heart condition. Dr. Davachi diagnosed the plaintiff as suffering from mitral valve prolapse with intermittent chest pain, for which he prescribed a beta-blocker, Corgard.

In August 1981, Dr. B.M. Berger performed a consultative examination. Dr. Berger indicated as part of his "diagnostic impression" that the plaintiff suffered from chest pain, possible angina pectoris, mitral valve prolapse by history, and osteodegenerative arthritis. Dr. Berger was of the opinion that the plaintiff could sit for a maximum of four hours and could not stand or walk for any significant period of time.

---

**2.** At the time of the hearing, the plaintiff was approximately 5′ 8″ and weighed approximately 102 lbs.

**3.** The plaintiff initially filed an application for disability insurance benefits on September 20, 1979. The application was denied by the Secretary and no appeal was made to the federal court. Although Dr. Rametta's 1980 letter was

originally submitted in support of the 1979 application, it was made part of the record in the instant matter, and therefore must be considered as evidence of the plaintiff's condition.

**4.** The diagnosis of amblyopia was confirmed by Dr. Marvin Corn, the ophthalmologist who treated the plaintiff.

Finally, in March 1984, Dr. Reuben Mokotoff performed a consultative examination for the Administration. His findings were consistent with those described above, and he noted that the plaintiff was taking Corgard, Vistaril, Motrin and Pen–V–K. He stated that the plaintiff was "markedly underweight," and that she could not straighten out her hands because of osteoarthritis.

After reviewing the record and hearing the plaintiff testify, the ALJ concluded that the plaintiff had not proved the existence of a significant medical impairment prior to March 31, 1981.

### DISCUSSION

The standards under which the Secretary is to make a determination as to disability are well established. A claimant seeking social security disability benefits is considered disabled for the purposes of the Act if the claimant is unable to engage in any substantial gainful activity because of a physical impairment which has lasted or can be expected to last for a continuous period of at least 12 months. 42 U.S.C. § 423(d)(1)(A) (1982). The claimant will be considered disabled if: (1) the existing impairment or impairments are of such severity that the claimant is unable to do his previous work, and (2) the Secretary finds that—given the claimant's age, education and work experience—the claimant cannot engage in any other kind of substantial gainful work existing in the national economy. *Id.* § 423(d)(2)(A) (Supp. I 1983).

In reviewing the record, the court does not displace the Secretary as the finder of fact; rather, the factual findings of the Secretary are conclusive if they are supported by substantial evidence on the record as a whole. *See Bluvband v. Heckler*, 730 F.2d 886, 891 (2d Cir.1984); *Parker v. Harris*, 626 F.2d 225, 231 (2d Cir.1980). Substantial evidence is "such relevant evidence as a reasonable man might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401, 91 S.Ct. 1420, 1427, 28 L.Ed.2d 842 (1971); *Bastien v. Califano*, 572 F.2d 908, 912 (2d

Cir.1978). Thus, the Secretary's determination may be set aside only if it is not supported by substantial evidence, or it is based upon legal error. In the case at bar, a careful review of the record compels the conclusion that the Secretary's determination, which is based on the ALJ's recommended decision, must be reversed.

The ALJ failed to apply the proper legal principles, and his finding that the plaintiff "was not under a disability prior to March 31, 1981" is not supported by the evidence. In particular, the ALJ refused to consider the combination of Salvati's impairments, and failed to sustain the burden of showing that the plaintiff retained the ability to perform work existing in the economy, given the plaintiff's physical condition, age, education and work experience. In addition, the ALJ rejected the plaintiff's testimony based on the erroneous conclusion that there was no acceptable evidence supporting the plaintiff's statements, and failed to give adequate weight to the medical evidence submitted by the plaintiff's treating physicians.

#### 1. *Claimant's Testimony*

■ It is well established that a number of factors should be considered in determining whether a claimant is disabled. These factors include (1) objective medical facts, (2) diagnoses or medical opinions, (3) the claimant's subjective testimony concerning pain or incapacity, and (4) background data such as the claimant's age, education, and previous work experience. *See Parker v. Harris*, 626 F.2d at 231; *Bastien v. Califano*, 572 F.2d at 912. Testimony concerning subjective pain and symptoms of illness "can sometimes suggest a greater severity of impairment than is demonstrated by the objective medical findings alone." *Polaski v. Heckler*, 739 F.2d 1320, 1322 (8th Cir.1984).

■ In the instant case, the ALJ gave no weight to the plaintiff's testimony concerning the nature of her impairments and the limitations that resulted from those impairments. The ALJ rejected Salvati's testimony because of the "paucity of objective

clinical signs and laboratory findings prior to March 31, 1981."

A review of the record, however, shows that there is abundant medical evidence corroborating the plaintiff's testimony, and that much of the medical record had been prepared between 1980 and 1982. Thus, the ALJ had no legitimate reason for rejecting the plaintiff's testimony.

The plaintiff testified that she suffered from chest pains, shortness of breath, dizziness and angina. Dr. Rametta, plaintiff's treating physician, submitted a letter in 1980 that stated that the plaintiff suffered from a cardiac condition together with accompanying chest pains. He also noted that the plaintiff had palpitations and arrhythmia. Dr. Davachi treated the plaintiff for her heart condition, and in 1981, he reported that she suffered from chest pains and shortness of breath, and that she was being treated for mitral valve prolapse. The plaintiff's testimony that she was taking a variety of medicines to control her ailments and alleviate pain was also corroborated by the reports submitted by Drs. Rametta and Davachi.

The plaintiff testified that she suffered from a visual impairment. Specifically, she testified that she is essentially blind in her left eye; she can see light through the eye, but can discern no figures or outlines. She also testified that the vision in her right eye was blurry and she suffered from headaches as a result of eyestrain. This condition was verified in 1981 by the plaintiff's ophthamologist, Dr. Marvin Corn.

The plaintiff further testified that she suffered from pain in her hands and legs. Although the ALJ found that the plaintiff's hands were impaired by osteoarthritis, he discredited her testimony concerning osteoarthritis in other parts of her body. Dr. Rametta's 1981 medical report, however,

indicated that he was treating the plaintiff for osteoarthritis of both the hands and knees. Indeed, the ALJ noted in his summary of the evidence that x-rays performed in June 1981 showed "osteoporosis with destructive changes" in the plaintiff's fingers *and* feet.

In considering the plaintiff's testimony, the ALJ concluded: "Since these symptoms are entirely subjective in nature ... I cannot find that [Salvati] experienced symptoms that would impose a significant limitation on her residual functional capacity[.]" In light of the medical record that exists, and absent any evidence controverting the plaintiff's claims, the ALJ's evaluation of the plaintiff's testimony does not constitute substantial evidence to support his conclusion that the plaintiff is not disabled.

### 2. Combined Impairments

■ It is well established that the ALJ must consider the combination of illnesses from which the claimant suffers.[5] *See De-Leon v. Secretary of Health and Human Serv.*, 734 F.2d 930, 937 (2d Cir.1984); *Cutler v. Weinberger*, 516 F.2d 1282, 1285 (2d Cir.1975); *Dixon v. Heckler*, 589 F.Supp. 1494, 1508–09 (S.D.N.Y.1984), *aff'd*, 785 F.2d 1102 (2d Cir.1986). In this instance, the record clearly identifies five separate and distinct impairments. Neither the ALJ nor the Secretary, however, analyzed these impairments in combination.

■ The ALJ recognized that Salvati suffered from a visual impairment, a heart condition and accompanying chest pains, unexplained weight loss, a respiratory impairment, and osteoarthritis in her hands, knees, and feet. Nevertheless, in evaluating the plaintiff's capability to engage in work other than her prior employment, the ALJ considered only the impairment of the plaintiff's hands.[6] The ALJ erred in failing

---

5. This rule was recently codified at 42 U.S.C. § 423(d)(2)(C) (Supp.1984).

6. The ALJ refused to consider any impairment, except the osteoarthritis in Salvati's hands, because the ALJ found that that impairment was the only one which was severe *per se.* The ALJ based his evaluation of what constituted a "se-

vere" impairment on Social Security Ruling 82–55. That ruling has subsequently been found to violate the Act "because it does not permit the individualized assessment of disability required by the Act." *Yuckert v. Heckler*, 774 F.2d 1365, 1369 (9th Cir.1985). *See also Johnson v. Heckler*, 769 F.2d 1202, 1210–13 (7th Cir.1985); *Bae-*

to consider the combined effect of the plaintiff's impairments.

### 3. *Prima Facie Case*

The burden is on the claimant to prove that he is disabled within the meaning of the Act. 42 U.S.C. § 423(d)(5); *Decker v. Harris,* 647 F.2d 291, 293 (2d Cir.1981). Where a claimant establishes that his impairment prevents him from performing his past work, the burden shifts to the Secretary, who must show that there is alternative gainful work in the national economy which the claimant could perform. *See Berry v. Schweiker,* 675 F.2d 464, 467 (2d Cir.1982).

██ In the instant case, the ALJ found that the claimant suffered from a severe "musculoskeletal impairment of both hands," as a result of osteoarthritis, and that this impairment prevented the plaintiff from "engaging in her past relevant work which required fine motor skills." This finding, which is supported by overwhelming evidence, confirmed that Salvati had satisfied her initial burden of showing that she is disabled. Thus the burden shifted to the Secretary to show that the plaintiff's impairment did not prevent her from performing other gainful work that exists in the economy.

██ In response to the plaintiff's *prima facie* showing of disability, the Secretary can point to no substantial contrary evidence that defeats the plaintiff's claim of disability. Indeed, the Secretary offered no evidence on this issue, being content to rest on the administrative record, which consisted of medical records and the plaintiff's testimony.

The ALJ held that the plaintiff "retained the residual functional capacity to perform medium, light, or sedentary work activity since her gross motor dexterity was not impaired and her ability to lift and carry would not be significantly limited by this impairment." The record, however, is devoid of evidence sufficient to support a conclusion that—given the combination of impairments—the plaintiff is capable of even sedentary work. The medical evidence is overwhelmingly to the contrary, and the ALJ failed to show that there is gainful work existing in the national economy which the plaintiff could perform considering her physical capability, age, education, experience and training.

### 4. *Treating Physicians*

██ The opinions of treating physicians are entitled to great weight. *See Bluvband v. Heckler,* 730 F.2d at 895; *Aubeuf v. Schweiker,* 649 F.2d 107, 113 (2d Cir.1981). The ALJ is not free to summarily reject or disregard the expert opinions of treating physicians. *See Fiorello v. Heckler,* 725 F.2d 174, 176 (2d Cir.1983). In the instant case, the ALJ failed to give the appropriate weight to the medical evidence submitted by the plaintiff's treating physicians.

The ALJ found that in 1981, when the plaintiff qualified for disability benefits, the plaintiff was not suffering from any cardiac impairment. Specifically, he found that she did not suffer from angina or mitral valve prolapse. In reaching this conclusion, the ALJ ignored the numerous medical reports stating that the plaintiff suffered from a heart problem, and substituted his own opinion for the expert opinions of the plaintiff's treating physicians. The ALJ also disregarded or dismissed the medical reports concerning the plaintiff's respiratory ailments.

In 1980 the plaintiff's treating physician, Dr. Rametta, stated that the plaintiff not only suffered from a cardiac condition, but that she was disabled as a result of chest pain, palpitations and arrhythmias. In

---

der v. Heckler, 768 F.2d 547, 551–53 (3d Cir. 1985); *Dixon v. Heckler,* 589 F.Supp. at 1502–06 (enjoining application of that regulation). The ALJ, however, failed to follow the clear direction of that regulation. The ALJ found that the plaintiff had one severe impairment, and the

ruling explicitly states that "when a nonsevere impairment(s) is imposed upon a severe impairment(s), the combined effect of all impairments must be considered in assessing [Residual Functioning Capacity]."

1981, Dr. Rametta reported that the plaintiff had "multiple diagnoses of mitral valve prolapse" and that she was taking medicine to control her heartbeat and angina.[7] Despite Dr. Rametta's diagnosis, and despite the absence of any supporting evidence, the ALJ concluded that "the claimant's chest pain was not typical of angina."

In addition, the ALJ cites Dr. Davachi's reports as support for the conclusion that the plaintiff does not have a cardiac problem. Dr. Davachi's reports, however, do not provide support for such a conclusion. In 1981, Dr. Davachi stated that he was treating the plaintiff "for her cardiac impairment. She has mitral valve prolapse, [and] intermittent chest pain." In a subsequent report in 1981, Dr. Davachi reported that the plaintiff had shortness of breath, and chest pains, and that she was taking medication to control the pain.

Although Dr. Rametta stated in his 1980 report that the plaintiff was totally disabled, the ALJ rejected that conclusion because Dr. Rametta "offered no objective findings to support this conclusion." It is well established in this Circuit, however, that "there is no requirement that the physician's medical testimony 'be supported by "objective" clinical or laboratory findings.'" *Bluvband v. Heckler*, 730 F.2d at 893 (*quoting Eiden v. Secretary of HEW*, 616 F.2d 63, 65 (2d Cir.1980). Here, Dr. Rametta had been treating the plaintiff since 1977, and his opinion was based upon his observations and the plaintiff's symptoms during the relevant period. Thus, the ALJ erred in rejecting Dr. Rametta's opinion because it was based upon plaintiff's symptomatology rather than on clinical or laboratory findings. *See Walker v. Heckler*, 588 F.Supp. 819, 823 (S.D.N.Y.1984).

Dr. Rametta also reiterated his conclusion concerning the plaintiff's disability in

his reports during 1982 and 1984. The ALJ, however, apparently considered only the medical evidence submitted prior to March 31, 1981, the date on which the plaintiff was last eligible to receive disability benefits. It must be noted, however, that " 'evidence bearing upon an applicant's condition subsequent to the date [of eligibility] is pertinent evidence in that it may disclose the severity and continuity of impairments existing before.' " *Eiden v. Secretary of HEW*, 616 F.2d at 65 (*quoting Gold v. Secretary of HEW*, 463 F.2d 38, 42 (2d Cir.1971)). In this case, the medical reports submitted by the treating and consulting physicians after 1981 consistently reflect that the plaintiff suffers from a combination of disabling impairments, and that those impairments existed prior to March 31, 1981.

## CONCLUSION

The Secretary's decision to deny benefits is not supported by substantial evidence. The ALJ and the Secretary failed to consider the combination of the plaintiff's impairments or to accord proper weight to the evidence in the record. Indeed, there is uncontradicted and persuasive proof of disability in the record. Furthermore, the plaintiff established that she was unable to return to her previous employment, and the secretary failed to rebut this *prima facie* case.

The Court is convinced that a remand for further evidentiary proceedings would serve no useful purpose. *See Carroll v. Secretary of Health & Human Servs.*, 705 F.2d 638, 643 (2d Cir.1983); *Parker v. Harris*, 626 F.2d at 235. There has already been one such remand, and the record has been fully developed. The medical evidence in the record indicates overwhelmingly that the plaintiff is not capable of per-

---

7. In his 1981 report, Dr. Rametta diagnosed the plaintiff as suffering numerous illnesses. Nevertheless, he stated that he believed Salvati was "capable of doing a job which required her to sit for 8 hours per day and which would not require fine motor skills." This clearly contradicts Dr. Rametta's prior statement that the plaintiff was disabled, and in 1982 Dr. Rametta

again concluded that the plaintiff was "totally disabled from performing any functional occupation." In light of the doctor's overall findings, his single statement that the plaintiff is capable of working for 8 hours per day does not constitute substantial evidence supporting the ALJ's finding that the plaintiff was not disabled.

forming even sedentary work, and there is no indication that the Secretary has additional material evidence. *See* 42 U.S.C. § 405(g) (1982). Accordingly, the Secretary's decision is reversed, and the matter is remanded solely for calculation and payment of benefits.

So ordered.