**Catalina SANTIAGO, Plaintiff,**

v.

**Otis R. BOWEN, M.D., Secretary of Health and Human Services, Defendant.**

**No. 86 Civ. 2067 (RWS).**

United States District Court, S.D. New York.

March 31, 1987.

Catalina Santiago, pro se.

Rudolph W. Giuliani, U.S. Atty., S.D.N.Y. One St. Andrew's Plaza New York City, for defendant; Donna H. Lieberman, Sp. Asst. U.S. Atty., of counsel.

SWEET, District Judge.

Catalina Santiago ("Santiago"), a *pro se* plaintiff, has brought this suit pursuant to Section 205(g) of the Social Security Act, as amended, 42 U.S.C. § 405(g), challenging a final decision issued by the Secretary of Health and Human Services (the "Secretary"). The Secretary denied Santiago's application for retirement insurance benefits, finding that Santiago lacked sufficient quarters of coverage for entitlement. The Secretary moved for judgment on the pleadings pursuant to Fed.R.Civ. 12(c), without opposition on November 21, 1986. For the reasons set forth below, the motion is denied, and the application of Santiago is remanded, and the action dismissed with

leave to reopen in the event that it becomes necessary upon completion of the remand.

**Facts**

Santiago is a seventy-year old woman who speaks no English and who emigrated from the Dominican Republic to the United States in 1965. According to Santiago, upon arriving in the United States she lived with the Rodriguez family, friends of her son, who had themselves emigrated from the Dominician Republic a few years before. While there, she kept house for them and babysat for their two small children (ages one and two). Both the Rodriguez parents worked, she as a sewing machine operator and he at an orthopedic manufacturing company. Mrs. Rodriguez testified that at the time she made about $89 a week and her husband made less than $200 a week, which works out to be a combined annual income of approximately $15,000. In addition to providing room and board, the Rodriguez' also paid Santiago $20 to $25 per week in cash, which she did not report as income and from which they did not withhold social security. The family had only a two-bedroom apartment, so the one-year old slept in a crib in his parents' bedroom, and the two-year old slept on a cot in Santiago's bedroom.

According to both Santiago and Mrs. Rodriguez, Santiago worked for the family until June, 1967, when she got a factory job that paid higher wages. From 1967 to 1972 Santiago was making between $49 and $68 a week working in different factories. In 1972, when Santiago was 55, she could no longer find work and in 1973 for the first time went on welfare, which she remained on until 1977 when she began receiving SSI. On one of the forms that Santiago has been required to fill out in seeking retirement benefits, she has indicated that she was disabled in approximately 1972. The record reflects that she underwent several operations in 1975.

In 1980, Santiago first applied for retirement insurance benefits, and was turned down because she was not "fully insured." To be fully insured, Santiago must have worked a total of at least one quarter for each calendar year after 1950 until the year that she became 62, which was 1979. 42 U.S.C. § 414(a); 20 CFR § 404.100 (1986). Years in which a person is disabled do not count in this calculation. *Id.* The secretary determined, on this record, and without a finding about whether time should be subtracted for disability that may have been present, that Santiago needed 28 quarters of coverage to be fully insured. Santiago was given credit for the following quarters:

| Year | Number of Quarters |
| --- | --- |
| 1965 | 0 |
| 1966 | 1 |
| 1967 | 3 |
| 1968 | 4 |
| 1969 | 4 |
| 1970 | 4 |
| 1971 | 2 |
| 1972 | 1 |
| Total: | 19 |

Not having the requisite number of quarters posted to her earnings record, Santiago was denied retirement benefits.

After having been turned down, Santiago had a conversation with a neighbor, who asked her whether she had ever worked at any job aside from her factory work. When Santiago said that she had worked as a housekeeper and babysitter for the Rodriguez family, the neighbor suggested that Santiago get her earnings record corrected. Santiago then asked Mrs. Rodriguez—with whom she had remained friends since living with and working for her fifteen years earlier—if Rodriguez would verify her employment and pay any back taxes due. Rodriguez agreed.

Towards this end, Santiago sought to file the necessary forms with the Department of Treasury. She obtained Wage and Tax Statement forms for 1965 through 1967 and took them to an attorney for help in filling them out. After she told the attorney that she was paid $20 a week for a half-year in '65, and full year in '66, and a half-year in '67, the attorney filled out the forms to reflect $520 in wages in 1965, $1,040 in 1966 and $520 in 1967. Sometime thereafter, Rodriguez received several notices that she owed back taxes to the IRS because she had not properly withheld Santiago's wages. She paid the amounts due

without a demand for reimbursement from Santiago.

On the strength of this documentation, Santiago filed another application for retirement benefits in May, 1984. However, because she did not submit a "statement of earnings," she was again turned down.

Part of the problem, apparently, was that Santiago had earlier submitted an incorrectly filled out HHS "Statement of Employer" form. In April, 1984, Mr. and Mrs. Rodriguez and Santiago, neither of whom speak English as a first language, together tried to fill out the form that Santiago had obtained from the Social Security Administration. They did so incorrectly, for instance, by checking boxes for quarters paid but leaving blank how much was paid. When Santiago tried to file the form with Social Security, it was rejected.

Their second try at the form, in June, 1984, was not much better. The earnings for one of the years was left off entirely, and an entry in one line was moved to another with an arrow. Finally, on June 18, 1984, Mrs. Rodriguez and Santiago went to the Social Security administration together and sat down with a Spanish-speaking employee who filled out the form on the basis of their representation that Santiago was paid $20 a week for her services for eight quarters (July 1, 1965 to June 30, 1967). The employee calculated Santiago's quarterly earnings at $240, even though at $20 per week they should be $260, or an annual salary of $1,040.

In August, 1984, Santiago filed a request for reconsideration, which was also denied. In explaining the denial, the Determination dated October 31, 1984, implied that Santiago had Rodriguez pay the back taxes as part of a scam: "It was indicated that [Mrs. Santiago] had Mrs. Rodgriguez [sic] pay the back taxes because she wanted a fully insured status. [Santiago] had wanted to leave the country and needed income. She knew she couldn't collect supplemental security income (SSI) when out of the country." The "Determination" contains no reference to any evidence in support of the allegation that Santiago planned to leave

the country, and none appears elsewhere in the record.

Santiago requested a hearing before an Administrative Law Judge ("ALJ"), which was held on July 30, 1985. Santiago's testimony was elicited through an interpreter who, as evidenced by numerous remarks of both Santiago's Legal Services Attorney (who was bilingual) and the ALJ, mistranslated, or failed to translate Santiago's testimony throughout the hearing. Santiago and Mrs. Rodriguez were the only witnesses, and they testified as outlined above. In a decision dated August 31, 1985 the ALJ decided that Santiago was not "fully insured."

Writing that he did not find Santiago's claim of employment "credible," the ALJ listed the following reasons. First, he said the difference in numbers between the IRS forms filled out by Santiago's attorney and the "Statement of Employer" filled out by the Social Security employee had not been "adequately explained away." Second, he did not "expect" a poor family with two wage earners to be the "type" that would have a live-in babysitter to care for their two infants, particularly given their small apartment. Third, he found that the fact that Mrs. Rodriguez had not demanded from Santiago a contribution towards back taxes was evidence of her illicit complicity with Santiago. That is, part of the tax liability presumably was Santiago's, not Rodriguez'. Consequently, the ALJ apparently viewed Rodriguez' failure to demand contribution as evidence of some kind of pay-off. Finally, he found that Santiago "has made it perfectly clear that she will leave the country if she becomes entitled to retirement insurance benefits, understanding full well that eligibility for supplemental security income payments ends upon departure from the United States." For these reasons, the ALJ concluded that Santiago "with the helps [sic] of Ms. Rodriguez is trying to establish the needed quarters of coverage by an act of subterfuge ... [W]hen [Mrs. Santiago] was informed by the Administration that she did not have the needed quarters of coverage she went to Mrs. Rodriguez for assistance and offered to pay the retroactive Social Security

Tax. What if anything was offered to Ms. Rodriguez need not be dealt with here."

The ALJ also noted that even if Santiago was credited with all the time she sought—four quarters for each of 1965, 1966, and 1967—she would still be shy of the requisite 28 quarters, as she already had partial credit for '66 and '67.

The ALJ's decision was adopted by the HHS Appeals Council as the Secretary's final decision, and Santiago began this civil action *pro se.*

**Discussion**

Congress has directed that "the findings of the Secretary as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. § 405(g). "Substantial evidence" has been defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales,* 402 U.S. 389, 401, 91 S.Ct. 1420, 1427, 28 L.Ed.2d 842 (1971) (quoting *Consolidated Edison v. NLRB,* 305 U.S. 197, 229, 59 S.Ct. 206, 216, 83 L.Ed. 126 (1938)); *Donato v. Secretary of Health and Human Services,* 721 F.2d 414, 418 (2d Cir.1983). "Substantial evidence" must be more than a "mere scintilla." *Perales,* 402 U.S. at 401, 91 S.Ct. at 1427.

■ Here, the reasons set forth by the ALJ do not meet the substantial evidence standard.

For his factual finding that Santiago will leave the country to live off the largesse of the United States government if awarded retirement insurance benefits, the record contains no evidence at all. As to his notion that the Rodriguez family is not the "type" to have Santiago live-in to care for their infants, the ALJ does not suggest how two low-paid working immigrant parents could have procured day-care for their children any cheaper than the $20 a week that they paid Santiago, particularly back in 1965, when day-care for low-income families was scarce. With regard to his conclusion that Rodriguez' failure to demand a contribution towards back taxes, the record suggests that the two women—immigrants so unsophisticated in the ways of United States bureaucracy that it took them three tries and, finally, help from an HHS employee to fill in all the blanks on a simple HHS form—were led to believe that the responsibility for withholding, and thus paying back taxes, was entirely the responsibility of the errant employer. Finally, the difference in cumulative salaries as reported to the IRS and HHS is not only numerically insignificant ($20 a quarter), but the forms were drawn up by different professionals who were being supplied with the same information by Rodriguez and Santiago, namely that Santiago's salary was $20 a week. This slight variation fails to create an inference that they are together defrauding the government.

While usually the factfinder's credibility determination is due significant deference, the train of inferences here rests on no more than a "mere scintilla," *Perales,* 402 U.S. at 401, 91 S.Ct. at 1427, and thus fails to outweigh the uncontroverted testimony of both the employer and the employee. But even aside from the extraordinary thinness of the ALJ's inferences, his credibility determination is further undermined by the fact that Santiago's interpreter omitted and misinterpreted her testimony throughout the hearing. To find Santiago incredible on the basis of mistranslated testimony casts significant doubt on the overall fairness of the hearing.

The Secretary has also argued that the case should be dismissed because even if Santiago is credited with all the time she seeks, her posted quarters would not total 28 and consequently she is still not fully covered. Santiago is asking that two more quarters be posted to 1965, three more to 1966, and one more to 1967, for a total of six additional quarters. Added to the 19 that she already has posted, this totals only 25.

■ If the Secretary is correct that Santiago needs twenty-eight quarters, then Santiago remains ineligible for retirement insurance. The way that the number of requisite quarters is calculated is to require one quarter for every year between 1951 and when a claimant turns sixty two, subtracting years during which the claimant was disabled. 42 U.S.C. § 414(a). Here

there is some indication in the record that Santiago became disabled in approximately 1972, although there is no indication for how long. Relevantly, 1972 is also the last year for which Santiago claims earnings. It is conceivable that she has been disabled since then. If so, then the years after 1972 would not be counted in calculating the requisite quarters for coverage, and she may need as few as 21 quarters, rather than 28.

The ALJ, however, has not fully explained how he arrived at 28 as the requisite number of quarters to establish coverage, and has not addressed the issue of whether, and for how long, Santiago was disabled for the purpose of calculating quarters. Consequently, the case must be remanded to the Secretary to create a record for the court to review with respect to the number of quarters Santiago needs in order to be fully insured.

**Conclusion**

For the reasons stated above, this case will be remanded for further proceedings consistent with this opinion. The case is closed with leave to reopen *ab initio*, on the specific understanding that the court retains jurisdiction, on motion and without the payment of filing fees, to enter all necessary orders or conduct any necessary future proceedings in the case, as if it had not been closed.

IT IS SO ORDERED.